GEORGE C. RANKIN, as Receiver, etc., *Appellant,* V.
ELLA M. WARE, as Executrix, etc., *Appellee.*

No. 17,468.

GEORGE C. RANKIN, as Receiver, etc., *Appellant.* V.
EDWARD S. BARTON, *Appellee.*

No. 17,467.

SYLLABUS BY THE COURT.

NATIONAL BANKS—*Insolvency—Assessment of Stockholders—
Liability.* The decision by the comptroller of the currency
that it is necessary to make a requisition on the stockholders
to pay the debts of an insolvent national bank is not open to
contest by the stockholders on the facts involved in the de-
cision. The comptroller acts quasi-judicially and his deter-
mination can not be impeached in a receiver's action to re-
cover the assessment, except for want of jurisdiction, bad
faith or other ground of equitable interference, and in such
cases the specific facts authorizing relief must be pleaded
with definiteness and certainty.

Appeal from Reno district court. Opinion filed
November 9, 1912. Reversed.

*J. S. Simmons,* of Hutchinson, for the appellant.

*W. G. Fairchild,* and *H. S. Lewis,* both of Hutchin-
son, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The plaintiff as receiver of the defunct
Hutchinson National Bank brought an action to en-
force the stockholders liability of the defendant.
Judgment was given for the defendant and the plain-
tiff appeals.

The petition contained the usual allegations in such
cases, including the making of the assessment by the
comptroller of the currency and the direction to the
receiver to collect it. The portion of the answer which
is now material was that a previous assessment of sev-
enty-five per cent levied on the stockholders was amply
sufficient, with the assets of the bank, to pay all its

liabilities "if said trust . . . had not been squandered and the assets . . . frittered away" and that there was no necessity for a second assessment to pay "any legitimate liabilities of said bank."

The answer presented no issue of fact for the consideration of the district court and judgment should have been given for the plaintiff on the pleadings. It is not charged in issuable form that acts of misconduct and mismanagement occurred, that through them losses were wrongfully sustained, and that the comptroller made a levy on the stockholders to make good such losses. But if such were the affirmative charge the stockholders would still be liable, under their contract, to assessment for unpaid debts of the bank. Section 5151 of the Revised Statutes of the United States forms an integral part of such contracts and reads as follows:

"The shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares."

Interpreted in the most liberal way, the answer does no more than assert that the first assessment was sufficient to discharge this responsibility and that there was no necessity for a second assessment to pay debts of the bank. Under the acts of congress the comptroller of the currency is a quasi-judicial officer, vested with jurisdiction to decide these questions, and his decision that it is necessary to make a requisition on the stockholders is not open to contest by the stockholders on the facts involved in the decision. Their contract is to pay at such times and in such amounts as he shall determine, and so long as he acts within his jurisdiction and in good faith his determination can not be impeached. Should he go beyond the ambit of his authority, or should his conduct be so irregular that to en-

force compliance with his order would be practically equivalent to working a fraud on the shareholders, they may resist it. In any such case the grounds of resistance must fall under some recognized head of equity jurisdiction, and in the federal courts relief must be sought in equity and not at law. Under our practice the defense may be made in the receiver's action to collect the assessment, but in all cases the specific facts relied on to vitiate the comptroller's action, whether they show want of jurisdiction, error of law, misconduct, fraud, or mistake, must be pleaded with all the definiteness and certainty required in similar cases.

The foregoing propositions of law are fully sustained by the authorities, which are collated by Judge Sanborn in the opinion in the case of *Deweese v. Smith,* 106 Fed. 438, 45 C. C. A. 408. To the lists contained in this opinion may be added the subsequent cases of *Studebaker v. Perry,* 184 U. S. 258, and *Rankin v. Barton,* 199 U. S. 228, one of the suits now under decision.

The following statements, taken from the headnotes to the report of *Deweese v. Smith,* are particularly pertinent:

"The statutes and the settled law of the land at the time a contract is made become a part of it, and must be read into it.

"The liability of the shareholders of national banks for their debts under section 5151 of the Revised Statutes is based upon contract.

"The contract of the shareholder of a national bank with the bank and its creditors regarding its debts is that, to an amount not exceeding the par value of his shares of stock, and not exceeding his equal and ratable proportion, he will pay, at such times and in such amounts as the comptroller of the currency shall demand, the debts and obligations of his bank.

"Under the acts of congress the comptroller of the currency is constituted a quasi-judicial tribunal to determine at what times and what amounts, not exceeding the full liability of the stockholders, it is necessary to collect from them to pay the debts of the

bank.   His decisions of these questions are impervious
to collateral attack, and open to avoidance by a court
only in a direct attack upon them for error of law,
fraud, or mistake.

"One who would attack in a federal court the de-
cision of a quasi-judicial officer for mistake of fact
must proceed in equity, and must allege and prove the
evidence before the officer from which the mistake re-
sulted, the way in which it was made, and the fact that
in its absence his decision would have been otherwise,
before a court can enter upon a reconsideration of the
issue before the officer."

The answer contained several defenses, and the plain-
tiff did not take measures to test the legal sufficiency
of the portion under discussion but replied by a gen-
eral denial.   The plaintiff now claims that the proof
offered at the trial was sufficient to sustain the judg-
ment of the district court.   A duly authenticated copy
of the original order of assessment was introduced in
evidence by the receiver.   The receiver himself tes-
tified to the present condition of his trust and gave
figures showing that the second assessment would not
be sufficient to liquidate the bank's affairs.   He also
presented a written statement showing the condition
of the bank when the second order was made, which
he had prepared from the records, and which follows:

LIABILITIES.

| | | |
|---|---:|---:|
| At date of suspension.... | $126,473.28 | |
| Established since suspension ................. | 7,845.10 | |
| Interest on claims to January 28, 1901.......... | 5,285.78 | |
| Expenses paid to September 30, 1900........... | 17,039.95 | |
| Remaining expenses estimated ................ | 241.24— | $156,885.35 |
| Less liabilities cancelled by offset ............. | 23,687.41 | |
| Less claims proved and surrendered ........... | 8,625.84 | |
| Less claims in dispute—cancelled .............. | 4,772.70 | |
| Less claims not proved—cancelled .............. | 1,481.81— | 38,567.16 |
| | | $118,318.19 |

Rankin v. Ware.

ASSETS.

| | | |
|---|---|---|
| Total collections ......... | $68,661.25 | |
| Less collected from assessments ............... | 17,850.49 | |
| | $50,810.76 | |
| Deduct loans paid........ | 26,492.57— | $24,318.19 |
| | | $94,000.00 |
| First assessment ................... | | 75,000.00 |
| | | $19,000.00 |

The defendant introduced a "Recapitulation," apparently of liabilities of the bank, found in a book delivered by the examiner who took charge of the bank at the time of suspension to a receiver who preceded the plaintiff. This recapitulation showed the liabilities at the time of failure to be $132,924.31. There was no proof of the correctness or finality of the recapitulation and there was no evidence beyond that which has been stated bearing upon the propriety of the comptroller's conduct.

The defendant insists that the receiver, in the preparation of the statement reproduced above, resorted to a bookkeeping trick which exposes the vicious character of the order in that he deducted the item "loans paid" from the proceeds of assets. The argument is that if loans were paid they were liabilities of the bank and so were necessarily included in the items scheduled as liabilities. The court is not aware of any such necessity, and loans paid are distinctly not included under the head of "liabilities" in this statement. The statement was prepared from the records before the comptroller when he made the order, and in the absence of proof to the contrary the presumption should be that loans paid were not classified with ordinary liabilities, designated as such, or with expenses, but belonged to a different schedule, in the receivership accounts. In any event neither bad faith nor mistake on the part of the comptroller can be predicated merely upon an indefinite item in the re-

ceiver's summary, and fair proof of some such delinquency was necessary to overthrow the order.

The defendant contends that interest on claims against the bank should not have been taken into account in considering the necessity for a second assessment, and consequently that the order rests in part on a patent error of law. Interest is as much a part of a debt as the principal on which it accrues. Insolvency does not change the nature of a bank's interest-bearing obligations, and stockholders are liable to ratable assessment to pay such obligations, up to the par value of their stock.

Nothing further is urged against the validity of the order except that it was made without justifying necessity. It was not open to the court to consider the evidence as relating to that subject. As already shown, the order of assessment, duly proved, was quite analogous in its conclusiveness to the final judgment of a court of competent jurisdiction. It could be impeached only by evidence of a certain character, and no evidence of that character appears.

The judgment of the district court is reversed and the cause is remanded with direction to render judgment in favor of the plaintiff.

The judgment in the companion case of *Rankin v. Barton,* No. 17,467, is also reversed and remanded with like direction.