No. 47,129

Marcus B. Landau, *Appellant*, v. The City of Leawood, *Appellee*.

(519 P. 2d 676)

Opinion filed March 2, 1974.

*Frank M. Rice,* of Jones, Schroer, Rice and Dillon, of Topeka, argued the cause, and *Matthew J. Dowd,* of the same firm, was with him on the brief for the appellant.

*R. Kent Sullivan,* of Payne and Jones, Chartered, of Olathe, argued the cause, and *Keith Martin,* of the same firm, and *Max Bagby,* of Leawood, were with him on the brief for the appellee.

The opinion of the court was delivered by

Foth, C.: This is a class action in which plaintiff sued on behalf of himself and other landowners in Overland Park who are connected to a sewer system operated by the city of Leawood. He sought to enjoin Leawood from charging his class more than fifteen dollars per year for the use of the sewer, and to recover sums previously paid in excess of that amount. His claim is based on certain covenants in "sewer declarations" of a private sewer company which he alleges are binding on the city as the company's successor in interest. Both parties moved for summary judgment, the trial court denied relief, and plaintiff has appealed.

The facts are not disputed, and are set out in the trial court's order, together with its conclusions of law:

"In 1945 Kroh Bros., Inc., a Missouri corporation licensed to do business in Kansas, a real estate developer of the area now comprising Leawood, Kansas, contracted for the construction of a sewage treatment system to replace individual septic tanks in the area of development. A sewer declaration filed with the Register of Deeds of Johnson County, Kansas, on February 16, 1946, extended to area residents the privilege of connecting to the system. Paragraph 4 of that declaration providing for the financing of such system stated that annual assessments for each connecting resident would not exceed $10.00. No period of duration of this limitation was expressed in the instrument.

"As additional land owned by Kroh Bros., Inc., was developed, additional sewer declarations were filed. However, beginning with the declaration filed with the Register of Deeds of Johnson County, Kansas, on April 2, 1952, the $10.00 limitation on the annual assessment was deleted.

"In 1954, at the insistence of the Federal Housing Administration, as a prerequisite for continued federal insurance of mortgages on area homes, a trust deed was executed between Kroh Bros., Inc., and the municipal corporation of Leawood, Kansas. The terms of this trust deed provided that in the event Kroh Bros., Inc., failed to operate the sewage system in accordance with the terms of the trust deed, the City of Leawood, Kansas, would become obligated to assume operation of the system. This trust deed was filed with the Register of Deeds of Johnson County, Kansas on January 12, 1955. Provision No. 6 of this instrument setting forth the annual service assessment provided 'that the maximum amount for which each owner shall be liable shall not exceed $15.00.' Again, as in the 1940 [sic] sewer declaration executed by Kroh Bros., Inc., no period of duration for this limitation was expressed.

"During the ensuing years in which Kroh Bros., Inc., continued to own and operate the sewage system under the terms of the trust deed two other contracts affecting this system were executed. On October 7, 1957, a sanitary sewer agreement between the county court of Jackson County, Missouri, Kroh Bros., Inc., the City of Leawood, Kansas, and Kansas City, Missouri, was signed. Two Missouri areas needed access to a sewage treatment system. Kroh Bros., Inc., also needing additional capacity agreed to contribute initially $300,000.00 for the development of a Missouri system in return for the right to connect 3,500 Kansas homes to the completed system. Kroh Bros., Inc., also retained an option to acquire additional connections on payment of specified amounts. Cost overruns in the development of the Missouri system eventually forced Kroh Bros., Inc. to increase its contribution to $425,000.00. Completion of this Missouri system allowed Kroh Bros., Inc., to place two of its Kansas plants on a stand-by basis. On November 9, 1957, Kroh Bros., and the City of Leawood, Kansas, executed a contract which specified the exact duties of Kroh Bros., Inc., in regard to the sewer system and provided for the disposition of monies received by the company from sewer connection fees.

"Thereafter on December 14, 1963, Kroh Bros., Inc., deeded title to the system to the City of Leawood, Kansas. In making this transfer free and clear to Leawood, Kroh Bros., Inc. absorbed a deficit of $180,000.00 which had been

incurred in the operation of the sewage system. In the deed conveying the title of the system to Leawood, no mention was made as to any limitation on the maximum annual assessment permissible. However, the deed did make reference to the preceding Sewer Declaration of 1945 and the trust deed of 1954 and stated that the transfer was to be made 'in accordance with the provisions and intent of the foregoing instruments'.

"Plaintiff asserts that the language of the 1945 sewer declaration and of the trust deed limiting the annual assessment for sewer service to $10.00 and $15.00 respectively, create covenants or restrictions running with the lands; that the City of Leawood, Kansas, had notice of the recorded limitation in the sewer declaration and expressly agreed to the limitations set forth in the trust deed and, therefore, holds title to the sewage system subject to these covenants. On this theory, plaintiff, representing the class of home owners similarly situated, seeks recovery of the difference between these limits and those annual charges assessed by Leawood in excess thereof. Defendant argues that if in fact covenants have been created which do run with the land in favor of the plaintiff, such covenants are inconsistent with the statutory authority of a municipal corporation to establish an equitable service charge based on the quantity and character of sewage discharged in the system, are unreasonable in nature, are adverse to the proper development of the community, and are contrary to the public good; that restrictive covenants are to be construed strictly; that covenants for which no period of duration is expressed should be limited to such time as seems reasonable within the nature of the circumstances, and, therefore, these covenants should not now be enforced against the City of Leawood.

## CONCLUSIONS OF LAW

"K. S. A. 12-631 (c) provides that where a city has acquired sewer facilities within the terms of K. S. A. (Supp.) 12-631 (b), as is the case here, that city, 'shall have the right to establish just, reasonable, and equitable service charges to be paid to such city for the use of such sewer system, said charges to be based on the quantity and character of both the sewer discharge in the system of the city. . . .'

"K. S. A. 12-631 (c) was enacted in 1947, and only those members of the class represented by plaintiff which contracted with reference to the covenants for the purchase of their lots between December 28, 1945, the date of the first sewer declaration and July 1, 1947, the date K. S. A. 12-631 (c) became effective, can rely on the 14th Amendment of the Federal Constitution and its prohibition against state infringement on private contractual rights in support of their contentions; the covenant is not enforceable by those members of the class contracting subsequent to July 1, 1947. Although the covenants involved herein 'run with the land', it does not appear that they should be referred to as 'restrictive' covenants.

"Authority supports the position that where enforcement would be inconsistent with the statutory grant of authority or would be detrimental to the normal development of the community, restrictive covenants will not be enforced. Harris vs. Pease, 135 Conn. 536, 66 Atlantic 2d 590 (1949). Similarly, where enforcement would be contrary to public policy and adverse to the interest of the general public, limitations will not be favored. Andrews vs.

Metropolitan Bldg. Co., 349 Mo. 927, 933, 163 SW2d 1024, 1028 (1942). Furthermore, contracting to arbitrarily limit its authority under K. S. A. 12-631 (c) would be an ultra vires act by a municipal corporation and such contract would, therefore, be void. Because enforcement of these covenants would make compliance by Leawood, Kansas, with its statutorily imposed duty to provide an effective sewer treatment economically unfeasible, such limitation imposed subsequent to K. S. A. 12-631 (c) will not be enforced.

"As to those members of the class represented by plaintiff that contracted for the purchase of their lots between December 28, 1945 and July 1, 1947, the covenant is unreasonable. The general rule is that the duration of covenants, if not specifically limited by the conveyance, is for a reasonable time, considering the nature of the circumstances and the purpose of their imposition. 20 Am. Jur. 2d Covenants, Conditions, etc. § 3. In the beginning, the maximum charges were sufficiently high to allow operation of a new treatment system without economic hardship. With the passage of time, bringing substantial development within the area the necessity for increasing maintenance, these limitations have become unrealistic and unreasonable in the fact of unforeseen inflation. In light of the changed circumstances, continued enforcement of these restrictions would be unreasonable, oppressive, and would seriously compromise a most necessary public health service. Therefore, those limits set forth in the above discussed instruments relating to the maximum assessment permissible will not now be enforced against the City of Leawood, Kansas, even as to those parties purchasing prior to the enactment of K. S. A. 12-631 (c), and the defendant may assess against plaintiff and the members of the class represented by plaintiff for sewer charges an annual amount reasonably necessary for the maintenance and operation of the sewage system."

We agree with the trial court, and concur generally in its reasoning.

It will be observed that the trial court dealt separately with two groups of plaintiff's class; those who bought their property before July 1, 1947, and those who bought afterwards. That is the effective date of the act authorizing the city to acquire and operate this private sewer system (Laws 1947, ch. 131.)

As to those purchasing after July 1, 1947, the answer is clear. They were on notice of the provisions of the act, and must be deemed to have contracted with reference thereto. *Securities Acceptance Corporation v. Perkins*, 182 Kan. 169, 318 P. 2d 1058; *Rankin v. Ware.*, 88 Kan. 23, 127 Pac. 531; *Edwards v. United States*, 215 F. Supp. 382 (1963); 17 C. J. S., *Contracts*, § 22. Cf. *Sebal v. Columbian Nat. Life Ins. Co.*, 144 Kan. 266, 58 P. 2d 1108; *Stevens v. Farmers Elevator Mutual Ins. Co.*, 197 Kan. 74, 415 P. 2d 236. They therefore knew that if the city ever acquired their sewer system it would have the statutory right under what is now K. S. A. 12-631c "to establish just, reasonable, and equitable service charges to be paid to such city for the use of such sewer system."

Equally important, they also knew that the same section provided that "No revenue derived from ad valorem taxes shall be used for the acquisition, operation and maintenance of the sewer facilities provided for in this act." This provision, in effect, made it mandatory that the city fix charges sufficient to defray the cost of maintenance and operation; it was forbidden to use tax money for these purposes. It is undisputed in this case that even the $15 per year contended for by plaintiff would be insufficient to cover current maintenance and operating costs. (There is no contention that the current service charges are not "just, reasonable and equitable.")

If the city were bound by a $15 per year limitation it could not operate the sewer system—an operation obviously essential to the health, safety and welfare of the community, as the trial court noted. We therefore agree with the trial court that even if the city intended to contract for such a limitation it would have been ultra vires. A city cannot contract away its statutory duties and responsibilities, particularly where they touch upon the police power. *Northern Pacific Railway v. Duluth.*, 208 U. S. 583, 52 L. Ed. 630, 28 S. Ct. 341; *N. Y. & N. E. Railroad Co. v. Bristol.*, 151 U. S. 556, 38 L. Ed. 269, 14 S. Ct. 437. Cf. *Phillips Petroleum Co. v. Jenkins,* 297 U. S. 629, 80 L. Ed. 943, 56 S. Ct. 611; *State, ex rel., v. City of Topeka,* 176 Kan. 240, 270 P. 2d 270; *Board of Education v. Phillips.,* 67 Kan. 549, 73 Pac. 97; *City of Clearwater v. Bonsey,* 180 So. 2d 200 (Fla., 1965); *City of Daytona Beach v. Stansfield,* 258 So. 2d 809 (Fla., 1972). (In the Florida cases it was held that a city could not by contract bind itself to sell water at less than cost, and that a contract which purported to do so would not be enforced.) And, of course, persons dealing with a municipality are bound to take notice of the limitations on its authority to contract. *Weil & Associates v. Urban Renewal Agency,* 206 Kan. 405, 479 P. 2d 875.

As to those who bought prior to the 1947 act, the situation is slightly different in that they cannot be charged with notice of the specific terms of the legislation. They can, however, be held to recognize that covenants ("restrictive" or otherwise) will be enforced in equity only so long as they remain reasonable in the light of their purpose. *Maurer v. J. C. Nichols Co.,* 207 Kan. 315, 485 P. 2d 174; *Hecht v. Stephens,* 204 Kan. 559, 464 P. 2d 258; *Clark v. Vaughan.,* 131 Kan. 438, 292 Pac. 783.

Insofar as the city is concerned, enforcement at this time is clearly unreasonable because, as pointed out above, compliance with the contractual limitations would render it impossible for the city to operate the system. What may have been reasonable in 1945 is not in 1974.

We note here that the original covenantor, Kroh Bros., Inc., is not a party to this lawsuit. We are therefore not called upon to decide whether the 1945 declaration, with its $10.00 per year limit, would be enforceable against it. It may even be that its 1963 deed to the city of Leawood—which the parties could anticipate would be compelled to charge more than the agreed maximum—constituted a breach of the corporation's agreement with plaintiff and his class. Neither do we decide whether the maximum limit is a covenant "running with" and "burdening" the land comprising the sewer system. There are obvious theoretical and practical difficulties with such a concept. What we do decide is that the covenant cannot be enforced against the city of Leawood where the result would be to render the city incapable of carrying out its statutory responsibilities.

What has been said disposes of plaintiff's argument that the city's action impairs the obligation of his class's contracts. As to those buying after July 1, 1947, there was no contract not subject to the express qualifications of the statute. As to those buying before, there was no "impairment" beyond that always present when equity refuses to enforce a covenant which has outlived its usefulness.

The court below correctly refused to enforce the covenant, and its judgment is affirmed.

APPROVED BY THE COURT.