No. 47,857

CITY OF COUNCIL GROVE, a Municipal Corporation, *Appellant,* v. HELEN OSSMANN, *Appellee.*

(546 P. 2d 1399)

Opinion filed March 6, 1976.

*David H. Heilman,* of Council Grove, argued the cause and was on the brief for the appellant.

*Elvin D. Perkins,* of Emporia, argued the cause, and *Gary W. Rulon,* also of Emporia, was with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: The City of Council Grove here sought to enjoin the defendant, Helen Ossmann, from continuing a common nuisance, and sought an order in the nature of a mandatory injunction requiring her to abate the nuisance. The trial court denied relief and the city appeals. The factual background is not in dispute.

Mrs. Ossmann was formerly Mrs. Harry L. Becker. Mr. Becker acquired title to a tract of real estate adjoining the city limits of Council Grove, Kansas, in 1947. The State Board of Health ap-

proved plans and specifications and the city issued a permit in June, 1948 to Mr. Becker for the construction of 1700 feet of 8-inch vitreous clay pipe (V. C. P.) sewer line to provide sewer service to the area. A part of the land was platted as Country Club Heights Subdivision to Council Grove. Mr. and Mrs. Becker signed the Plat, Restrictions and Dedication as "Owners." The plat was approved by the city and by the Board of County Commissioners, and was filed of record. The subdivision was annexed by the city in September, 1948. Similarly, an additional area was platted as the First Addition to Country Club Heights Subdivision, and was annexed to the city by ordinance enacted in December, 1950.

Pursuant to the permit issued to him, Harry L. Becker built approximately 1350 feet of vitreous clay pipe sewer line. He also built approximately 4000 feet of four-inch and six-inch Orangeburg pipe sewer laterals and connected this to the V. C. P. line, which in turn was connected directly to the city sewer system. Orangeburg pipe is made from asphalt impregnated paper. It is not approved for public sewer purposes. All of the Orangeburg laterals were completed by about 1951. The city accepted the vitreous clay line in 1952 and has since maintained it. The city rejected the Orangeburg, which did not meet standards set by the State Board of Health, but it has continued to serve the area for some twenty-five years. The State Board of Health notified the city in 1952 that the Orangeburg laterals were in violation of good engineering practices, both as to type of material and constructed size of pipe; and that in the event of malfunction the city would be responsible for taking corrective steps since the lines were within the city limits and were connected to the city sewer.

Harry L. Becker died intestate on September 8, 1955. His estate was administered in the Probate Court of Morris County, Kansas and the estate closed. His widow, the defendant, was his sole heir. No claim was filed against the estate by the city. There are some 32 homes in the subdivision, nine of which are connected to the vitreous clay line and the remainder are served through the Orangeburg. The Orangeburg lines were laid primarily in the public street right of way. Manholes were built in connection with the Orangeburg line. Some of these are in the public right of way; others are in a public park.

Occasionally the Orangeburg will "flatten out" or collapse, causing a stoppage of the flow. Harry L. Becker maintained the Orangeburg laterals during his lifetime and for about fifteen years

after his death his widow continued to do so. Mr. Becker, and later the defendant, would call upon and pay Jim Hewitt, and he would maintain the lines. About 1960, Mrs. Ossmann caused some 200 feet of Orangeburg to be replaced in the park and street. Mrs. Ossmann caused plans to be prepared in 1964 for a V. C. P. line, to replace the Orangeburg, and at that time she secured a cost estimate. However, no work was done and the Orangeburg has not been replaced.

In the five years prior to trial, manholes in the Orangeburg line overflowed at least twelve times. This caused raw sewage to erupt in at least one private dwelling and to overflow into the road ditches where it flows into a lake in the public park. The evidence discloses that these "trouble spots" are all on public land. There is no contention that sewage has escaped from any line located on land owned by the defendant.

The trial court made findings of fact and conclusions of law as follows:

"1. The court has jurisdiction of the parties and the subject matter.

"2. Helen Ossmann, the defendant in this matter, was the former Helen Becker, wife of Harry L. Becker.

"3. Harry Becker was the grantee in a deed as to the property in question, dated 26 May 1947.

"4. On 19 April 1948, the plaintiff permitted Harry Becker to connect a sewer line subject to approval of the State Board of Health.

"5. A plat of the land in question was accepted into the city on 6 August 1948.

"6. On 7 September 1948, the plat of Country Club Addition was approved by the City of Council Grove, and the Board of County Commissioners of Morris County.

"7. Part of the dedication on the plat executed by 'Harry L. Becker and Helen N. Becker, his wife' states: '. . . the same to be divided into blocks and lots, with streets, parks, and easements. The streets, drives and lanes are dedicated to the public for street purposes; the parks are dedicated to the public for park purposes, and the easements dedicated to the public utilities for use as utility easements.'

"8. On 8 September 1948, 'Harry L. Becker and Helen N. Becker, his wife' filed declarations of restrictions which are an exhibit in this matter and made a part hereof, the same as if set out fully.

"9. On 4 December 1950, the City approved, and on 5 December 1950, the County approved, the plat of the First Addition to Country Club Heights Subdivision, wherein 'Harry L. Becker and Helen N. Becker, his wife' make the following dedication: '. . . the streets and drives are dedicated to the public for street purposes, and easements dedicated to the public utilities for use as utility easements.'

"10. The only sewer line in question in this action must be in the dedicated easements, public parks, and roadways.

"11. Some of the sewer lines were not properly bedded or of sufficient size.

"12. The sewer lines in question were not constructed in accordance with the State Board of Health rules and regulations.

"13. Because of improper installation or inadequate load capacity, sewage was discharged on both public and private land.

"14. All sewer lines were initially in place prior to 8 September 1955, the date of death of Harry L. Becker.

"15. Harry L. Becker died intestate.

"16. Neither the City nor the County filed any claim in said estate.

"17. Helen N. Becker inherited by law and not by specific devise.

"18. Subsequent to 8 September 1955, Helen Becker Ossmann did attempt to effectuate a repair of the sewer line on both private and public land.

"19. On 18 April 1960, the City enacted an ordinance for a sewer service charge.

"20. The City sewer service charge is billed to the individual property owners in the addition and not as a composite billing to Helen Ossmann.

"21. On 16 October 1961, Helen Ossmann requested from the City requirements necessary for acceptance of the sewer lines in question.

"22. On 30 March 1964, Helen N. Ossmann had a topographic plan prepared for a revised sewer system designed by her husband, Carl Ossmann, and submitted the same to the State Board of Health, which approved the same.

"23. No work was started in conformity with the above-stated approved plan.

"24. The City filed this action, based upon the theory of common or public nuisance, on 3 April 1972.

*"Conclusions*

"A. The court finds that the paramount consideration, where the subject is the direction, flowage, and discharge of raw sewage, is public health and welfare.

"B. The court finds, because of the inherent danger to public health of uncontained human waste, that the primary responsibility lies with public entities, i. e., State, County, and City.

"C. The court believes that this prime obligation cannot be delegated to an individual or any private entity short of actual contract, with adequate safeguards for the well-being of the general public.

"D. The court finds that prior to 8 September 1955, Helen N. Becker had only an inchoate right of dower in the hereditaments of Harry L. Becker.

"E. The court finds that the signature of Helen N. Becker, designated as 'his wife', was to effectuate the passing of title or the dedication of lands to public use by eliminating any possible inchoate right.

"F. The court believes that the primary responsibility for sewage cannot depend on intestate succession.

"G. The court finds that if an obligation existed, it was personal to Harry L. Becker and died with him.

"H. The court believes that Helen N. Becker had no legal obligation to this plaintiff as to the sewer lines on dedicated property.

"I. The court finds that Mrs. Ossmann injected herself into this affair where she had no legal concern, i. e., as a volunteer.

"J. In the matter of the disposal of raw sewage, a governmental unit cannot rely upon a volunteer.

"K. The City, by accepting the platted land to be used as private housing with the dedications set forth herein, assumes the obligation to see that the proper sewage disposal is carried out. Nothing short of actual maintenance to prevent a nuisance which is dangerous to the community welfare will suffice under the court's findings herein.

"L. The court believes that the obligation placed upon the City as set forth herein could give rise to a legal action under certain conditions, but not as to this plaintiff's prayer against this defendant at the time of the filing of this action.

"The court grants judgment to the defendant, taxes the costs to the plaintiff. The court does not require that this matter be journalized, and will file the original with the Clerk of the District Court of Morris County, Kansas, on the 29th day of July, 1974, which date is the date from which all statutory procedures should run."

The city contends that the trial court erred in making findings of fact numbered 4 and 10 and in adopting conclusions of law designated B, E and H, and in failing to adopt certain findings of fact and conclusions of law proposed by the plaintiff.

The first finding of fact attacked is that the city permitted Mr. Becker to connect a sewer line subject to approval of the State Board of Health on April 19, 1948. The record supports this finding. The city did authorize Becker to build 1700 feet of V. C. P. sanitary sewer line and to connect this to the city main. The city did not authorize the building of the Orangeburg laterals which serve the remainder of the addition, but the city was aware of their construction and knew that they were connected to the city sewage system. The city may feel that the trial court's finding is in error because it did not distinguish between the authorized V. C. P. line and the unauthorized Orangeburg. The record is abundantly clear, however, that the city formally authorized the construction and connection of the V. C. P. and the city has had knowledge of the existence of the Orangeburg lines since construction. There is substantial competent evidence to support the court's finding.

The city next complains of the court's finding that the "only sewer line in question in this action must be in the dedicated easements, public parks and roadways." The city contends that plaintiff's exhibit No. 11, reproduced at page 83 of the record, indicates otherwise. The exhibit is a rough sketch of sewer lines, superimposed upon what appears to be a plat of the area. Some of the

lines drawn appear to be wider than the streets and wider than some of the lots. The drawing was prepared by Alvin Orton, water and sewage superintendent for the city of Council Grove. His testimony does not disclose that the sewer lines were installed other than on public property or dedicated easements. The exhibit fails to indicate the existence of any easements at all, and it does not show the specific location of the sewer lines. In any event, there is no evidence that any portion of the sewer upon which the overflow occurred was located on land owned by the defendant at the time of the overflow. There was testimony that sewage overflowed in a private dwelling on land not owned by the defendant, and in the public streets and park. So far as the evidence discloses, the only sewer lines for which there is a question of responsibility are the lines located on public rights of way or public land. There is substantial competent evidence to support this finding.

The city next contends that the trial court erred in failing to adopt eight of the city's proposed findings of fact. We first consider the purpose of findings of fact and the necessary scope thereof. K. S. A. 60-252 (*a*) provides in applicable part that:

"In all actions tried upon the facts without a jury  .  .  .  the judge shall find, and either orally or in writing shall state, the controlling facts.  .  .  . Findings of fact shall not be set aside unless clearly erroneous.  .  .  . If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and reasons for the decision appear therein.  .  .  ."

The provisions of this section are mandatory. In *Duffin v. Patrick,* 212 Kan. 772, 512 P. 2d 442, this court said:

"In civil actions tried to the court the rules requiring expression of controlling findings of fact (K. S. A. 60-252 [*a*]) and controlling principles of law (Rule No. 116, 209 Kan. xxxviii) are designed as an aid to the integrity of the decision. They are mandatory and should be fairly observed by the trial judge." (Syl. ¶ 2.)

As to the extent of the findings required, this court, in *Andrews v. Board of County Commissioners,* 207 Kan. 548, 485 P. 2d 1260, said:

"The findings required by K. S. A. 60-252 (*a*) should be sufficient to resolve the issues, and in addition they should be adequate to advise the parties, as well as the appellate court, of the reasons for the decision and the standards applied by the court which governed its determination and persuaded it to arrive at the decision. These requirements are apparent in the statute itself.

"The purpose of the requirements in the statute is similar to the purpose for findings by administrative agencies. See *Kansas Public Service Co. v. State Corporation Commission,* 199 Kan. 736, 433 P. 2d 572; and *Central Kansas*

*Power Co. v. State Corporation Commission,* 206 Kan. 670, 482 P. 2d 1."
(pp. 555, 556.)

Our function on appeal is to determine whether the findings of the trial court are supported by substantial competent evidence (*Schmidt v. Jensen Motors, Inc.,* 208 Kan. 182, 490 P. 2d 383) and whether the findings are sufficient to support the trial court's conclusions of law. The findings adopted by the trial court will not be set aside unless they are clearly erroneous. *Funke v. Fieldman,* 212 Kan. 524, 512 P. 2d 539; *Phillips & Easton Supply Co., Inc. v. Eleanor International, Inc.,* 212 Kan. 730, 512 P. 2d 379.

Specifically, the city complains that the trial court failed to find that the defendant executed a declaration of restrictions, showing Mr. and Mrs. Becker to be the "owners" of the subdivision; that the defendant, in 1961, inquired of the city what requirements would need to be met for the city to accept the Orangeburg; that the defendant, in 1964, submitted plans to the State Board of Health for the reconstruction of the sewer lines in question and contacted contractors concerning construction; that the Orangeburg lines were not properly constructed and maintained, discharged raw sewage into a populous area, and constituted the maintenance by defendant of a public nuisance; and that the court failed to order the defendant to abate the nuisance.

Several of these proposed findings contain both factual matters and conclusions of law. Whether the Orangeburg lines constituted a nuisance, whether the defendant maintained a nuisance, and whether the court should order abatement all appear to be questions of law.

Had the court adopted the factual findings proposed (and not the matters of law noted) the court's conclusions of law could remain unchanged. Nothing therein would compel a different determination of this action. The findings of the trial court are supported by substantial evidence and support the court's conclusions of law. We find no error in the court's failure to adopt the city's proposed findings.

Simply stated, the trial court concluded as a matter of law that the primary responsibility for disposal of sewage rests with the city; that neither the defendant's signature on the plat and the restrictions identifying her as an owner of the subdivision, nor her voluntary acts of maintenance or proposed replacement of the Orangeburg, imposed any legal obligation upon her as to the sewer lines located on publicly dedicated property or property sold to others;

and that the city by accepting property dedicated to public use is estopped to deny its obligation to maintain sewer lines on such property, despite its lack of formal acceptance of the lines.

The city next contends that the trial court erred in adopting conclusions of law B, E and H. These conclude that because of the inherent danger to public health, the primary responsibility for sewage disposal lies with public entities such as the city; that the defendant's signature to the plat and dedication was to effectuate the passing of title of lands dedicated to public use by eliminating any possible inchoate right; and that the defendant has no legal obligation to the city as to sewer lines on dedicated property.

The city contends that it has the primary responsibility for disposal of sewage only when it has acquired sewer lines pursuant to K. S. A. 12-631b. That section provides for the formal acquisition by a city of sewers or sewage facilities by gift, purchase or otherwise. It does not preclude the city from acquiring sewer lines in place in dedicated public streets, easements and public areas. Here, the city approved the plat and annexed the subdivisions after the lines were in place, or permitted Mr. Becker to complete the installation shortly after annexation. The city has enacted an ordinance imposing a sewer use tax upon each of the dwellings in the subdivision which are connected to the public sewer. The city receives the flow of sewage from the subdivision. It cannot shift its duty of sewage disposal by contract or otherwise. *Landau v. City of Leawood,* 214 Kan. 104, 108, 519 P. 2d 676.

The city argues that though it acquired the public streets and easements through dedication, defendant as a dedicator continues to be responsible for the operation and maintenance of the sewer system underlying such dedicated ways. The city offers no rational or cogent theory in support of its position and we perceive none. The fee title to all property intended for public use vests in the county in trust for the public by virtue of K. S. A. 12-406. The authority to control, use and improve the streets is vested in the city. *State, ex rel., v. City of Garnett,* 177 Kan. 709, 281 P. 2d 1085; *City of Emporia v. Humphrey,* 132 Kan. 682, 297 Pac. 712. The dedicators no longer have title to property dedicated for public use once a plat has been approved, filed and recorded. 23 Am. Jur. 2d 55, Dedication, § 64. The fee title vests in the county forever. *Douglas County v. City of Lawrence,* 102 Kan. 656, 171 Pac. 610.

It is clear that the laterals causing difficulty were constructed and connected to the Council Grove sewer system by Harry L. Becker

some twenty-five years ago. They were built in the public right of way. They were acquired by the city upon its approval of the plats and its annexation of the subdivisions. See 11 McQuillin Mun Corp (3rd Ed), § 31.09, pp. 193, 194, where it is said:

"One who builds a private sewer in a public street, with the city's permission, . . . does not own the sewer. A city . . . cannot give away its rights in the public streets. . . .

"Private sewers and drains may become the property of the municipal corporation by purchase or by dedication duly accepted by the municipal authorities; also by annexation, or prescription; and in some cases private sewer lines are regarded as becoming municipal lines merely through connection and integration in the latter. . . ."

The defendant had only an inchoate interest in the land prior to platting and the evidence does not disclose that she had anything to do with the original sewer construction. No right in the sewer line was reserved in the plats and dedications. The trial court was eminently correct in concluding that this defendant has no legal obligation to maintain, repair or replace these sewer lines.

It would prolong and add nothing to this opinion to discuss each of the proposed conclusions of law urged by the city. Suffice it to say that these were urged upon and properly rejected by the trial court.

The judgment of the trial court is affirmed.