**KNOX PORCELAIN CORPORATION**

v.

**TEAMSTERS LOCAL UNION NO. 519 KNOXVILLE AND VICINITY, Affiliated with the International Brotherhood of Teamsters, Chauffeurs, and Helpers of America.**

Civ. No. 3–80–426.

United States District Court,
E. D. Tennessee, N. D.

Nov. 11, 1980.

Eldred A. Gentry, Cleveland, Ohio, Wilson S. Ritchie, Knoxville, Tenn., for plaintiff.

Jess D. Campbell, Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

In this action plaintiff Knox Porcelain Corporation (hereinafter the Company) seeks to vacate an arbitration award. The case is presently before the Court on plaintiff's motion for summary judgment.

The facts are not in dispute. Mary Brantley was employed by the Company and its predecessor since 1961. At all times relevant to this case, a collective bargaining agreement was in effect between the Company and the defendant Teamsters Local Union No. 519 (hereinafter the Union). Under that agreement, jobs were placed in various job classifications. From 1969 to 1979, Mrs. Brantley worked as stockroom clerk, a job within the machine operator classification. On August 20, 1979 due to technological and product requirement changes, Mrs. Brantley was transferred from the stockroom clerk job to a job in the press room, another job within the machine operator classification. On September 4, 1979, Mrs. Brantley was again transferred, this time to a suspension glaze wheel crew job, another job within the machine operator classification. On September 18, 1979, the suspension glaze wheel crew ran out of work and was temporarily assigned to the spool glaze wheel job, still another job within the machine operator classification. As stated in Mrs. Brantley's affidavit, this job

> involved putting a tray of spools onto a line at one end and taking them off at another end. The board on which the spools were placed held either 32 or 34 spools each weighing two (2) pounds. The board had to be lifted from about knee high to well up over a person's head.

Mrs. Brantley was unable to lift the boards of spools and so informed her supervisor. Shortly thereafter, the Company's personnel manager told Mrs. Brantley that he would have to terminate her as a voluntary quit for failure to perform work available in her job classification. A grievance was filed the same day in which Mrs. Brantley

claimed she had not quit and claimed that the Company had violated Articles 3.6 and 21 of the collective bargaining agreement.[1] The grievance was submitted to arbitration pursuant to the collective bargaining agreement.

The arbitrator stated the issue to be: "Was the termination of Mary Brantley on September 18, 1979 proper under the terms of the labor agreement and if not, what should the remedy be?" The arbitrator found that the transferring of Mrs. Brantley from job to job within the machine operator classification did not violate the agreement. However, the arbitrator found that the Company "violated the spirit of the agreement" in not allowing Mrs. Brantley the option of taking a layoff when she was unable to do the work at the spool glaze wheel. He then made the following award:

> The grievant is to be placed on layoff effective September 19, 1979, rather than be considered a quit. She is to have all the rights pertaining thereto. The grievant is to be assigned to the job to which she would have been eligible a week after her layoff. She is to be made whole for earnings and fringe benefits lost since then, with appropriate adjustment for unemployment compensation and minus any outside earnings during the interim.

In *Storer Broadcasting Co. V. American Federation of Television and Radio Artists, Cleveland Local, AFL–CIO*, 600 F.2d 45 (6th Cir. 1979), the United States Court of Appeals for the Sixth Circuit recently summarized the law applicable to judicial review of the award of an arbitrator. In *Storer*, 600 F.2d at 47, the Court stated that

> It is very well settled that the courts are generally required to refrain from reviewing the merits of an arbitrator's award due to the policy favoring arbitration as a means of resolving labor disputes. This was established in the *Steelworkers Trilogy [United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)]. . . . But there are at least two important exceptions to this general rule. First, "the arbitrator is confined to the interpretation and application of the collective bargaining agreement, and although he may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions." *Detroit Coil Co. v. Int'l Ass'n of Machinists*, 594 F.2d 575, 579 (6th Cir. 1979), *citing cases*. Thus, the courts are empowered to set aside an award if the arbitrator exceeds these confines. Second, "although a court is precluded from overturning an award for errors in the determination of factual issues, '[n]evertheless, if an examination of the record before the arbitrator reveals no support whatever for his determinations, his award must be vacated.' " *Id.* at 590–91, *citing NF & M Corp. v. United Steelworkers of America*, 524 F.2d 756, 760 (3d Cir. 1975). *See also Timken Co. v. Local Union No. 1123 United Steelworkers of America*, 482 F.2d 1012, 1014–15 (6th Cir. 1973). (Footnotes omitted.)

In challenging the arbitrator's award in this case, the Company relies upon both of the exceptions stated above. The Company argues that the arbitrator exceeded his authority by ruling that the Company could not terminate Mrs. Brantley for failure to perform a job in her classification to which the arbitrator had found it was proper to transfer her. The Company also argues that the arbitrator had no authority to order that Mrs. Brantley be placed on layoff and given the rights of a laid off employee under Article 3.3 of the collective bargain-

---

1. Article 3.6 provides in relevant part that
[e]mployees shall lose their entire seniority if:
(a) They voluntarily quit.
(b) They are discharged for cause.
Article 21 provides that

[t]here will be no discrimination against any employee because of sex, race, color, religion, creed, nationality, or age up to sixty–five (65) years.

ing agreement.[2] This is so, the Company argues, because this was not a layoff case, as that term is ordinarily used, but rather an employee termination case.

■ In the opinion of the Court, these arguments miss the mark. Article 7.1 of the collective bargaining agreement provides that: "Employees shall be disciplined or discharged only for just cause." Although the arbitrator did not state that he found that the Company violated this provision, it seems apparent that he did so find. At oral argument counsel for both parties stated that the "bottom line" of the arbitrator's decision is that the Company terminated Mrs. Brantley without just cause. Having found that the Company violated the agreement, the Arbitrator made an award. It is well settled that where the collective bargaining agreement is silent as to remedies, as is the agreement in this case, the arbitrator is given wide latitude in fashioning a remedy. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Mogge v. District 8, International Association of Machinists, AFL–CIO*, 454 F.2d 510 (7th Cir. 1971); *Tobacco Workers International Union Local 317 v. Lorillard Corp.*, 448 F.2d 949 (4th Cir. 1971); *Lodge No. 12, District No. 37, International Association of Machinists v. Cameron Iron Works, Inc.*, 292 F.2d 112 (5th Cir. 1961). Awards requiring reinstatement of an employee have often been upheld. *See Enterprise Wheel, supra; Mogge, supra; International Union of Electrical Workers v. Westinghouse Electric Corp.*, 455 F.Supp. 392 (W.D.Pa.1978). In *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361, the Supreme Court commented on the function of the arbitrator in granting remedies.

When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations.

■ On these authorities, this Court holds that the award of the arbitrator requiring that Mrs. Brantley be placed on layoff and given all rights pertaining thereto is within the scope of the arbitrator's authority and consistent with the collective bargaining agreement.

Next, the Company argues that the arbitrator exceeded his authority by ruling that Mrs. Brantley must be placed on a job within the production worker classification when no evidence was introduced to show that she had seniority in that classification. The Company thus argues that the award violates Articles 3.2 and 3.3 of the collective bargaining agreement.[3] As the Court reads his opinion, the arbitrator did not hold that Mrs. Brantley must be given a job in the production worker classification. At one point he states that

[a]s I read Article 3.3, a laid–off employee is assigned to the highest classification in which he has seniority rights, but if an employee is laid off for more than a week, he is entitled to apply his seniority rights to other classifications. Here that would be production workers.

Later in his opinion he states that

[i]f the grievant had been given an option to perform the job or take a layoff and she chose the layoff, then on September 26 she would have become eligible to apply her rights to another classification. She is to be given those rights and allowed to assume the job (*if any*) for which she would be eligible at that time. (Emphasis ours).

---

2. Article 3.3 provides in relevant part that

[l]ayoffs and recalls shall be made in accordance with an employee's seniority rights in a classification .... Employees shall not be promoted because of a layoff, but otherwise, shall be assigned to the highest paying classification in which they have seniority rights. Employees laid off for one (1) week or less shall not be entitled to exercise their seniority rights in another classification....

3. Article 3.2 provides that

[s]eniority rights shall be plantwide by classification. Seniority rights in a classification shall be acquired by being classified and working in a classification for three (3) consecutive months.

In his award, the arbitrator does not mention the production worker classification. It thus appears that the arbitrator simply ruled that Mrs. Brantley must be allowed to apply her seniority rights to another classification as Article 3.3 allows a laid off employee to do. He does not say that Mrs. Brantley had acquired seniority in the production worker classification; but if she had acquired such rights, he intended for her to have them.[4]

Finally, the Company contends that the arbitrator's award requires the Company to violate the Civil Rights Act of 1964 because the award allows an employee to select a particular job on the basis of sex. This argument is without merit. Mrs. Brantley's physical ability to do the job, and not her sex, was the issue in this case.

For these reasons, it is ORDERED that the Company's motion for summary judgment be, and the same hereby is, denied. It is further ORDERED that judgment enter in favor of the defendant and that the award of the arbitrator be enforced.

Order Accordingly.

4. The Court agrees with the Company that the record does not contain any evidence upon which to base a finding that Mrs. Brantley had gained seniority rights in the production worker classification. Therefore the award as construed by the Company would not be entitled to enforcement. However, as stated above, the Court does not subscribe to this interpretation of the award.