(657 P.2d 72)

No. 53,934

GLENN WEEMS, *Appellee,* v. BUILDEX, INC., *Appellant.*

Opinion filed January 20, 1983.

*Thomas E. Gleason,* of Thomas E. Gleason, Chartered, of Ottawa, for appellant.

*Melvin L. Howell,* of Oswalt & Howell, of Hutchinson, for appellee.

Before REES, P.J., MEYER, J., and JAMES J. NOONE, District Judge Assigned.

REES, J.: An arbitration award was entered as the result of a grievance prosecuted by plaintiff pursuant to a collective bargaining agreement. Defendant appeals from a district court order voiding that part of the award which denied back pay to plaintiff.

The presently pertinent parts of the arbitrator's award are as follows:

### "AWARD OF ARBITRATOR

"This is a voluntary labor arbitration . . . .

"The arbitration involves the grievance filed by Glenn E. Weems . . . contesting his discharge.

. . . .

"The Grievant was discharged on August 29, 1980, and the issue was whether the Grievant . . . was discharged for just cause on August 29, 1980.

". . . The critical section of the work rules, which the Company contends were violated by the [Grievant], were as follows:

" 'Any of the following actions can be determined as sufficient grounds for some disciplinary action ranging from suspension from work for a specified period of time to immediate discharge . . .

" '#6 . . . consuming . . . any type of alcoholic beverage . . . . Employees noticeably affected by use of any of the above, prior to reporting for work will not be permitted to remain on company property.'

. . . .

### "COMPANY'S CONTENTION

"The Company contends that the Grievant was disciplined for a drinking violation on January 5, 1980, and that a second violation occurred on August 29, 1980, and that these two violations within a twelve (12) month period allowed the company to discharge the Grievant.

### "UNION'S CONTENTION

"The Union contends that the Grievant was not drinking on the company plant, and was not under the influence of intoxicating liquor, but even if he was, the

company has discriminated against him because it did not uniformly apply the working rules to all of the employees, as there was evidence that the Superintendent had consumed beer on the company premises and had not been disciplined.

## "DISCUSSION

". . . The main issue is whether or not Grievant had been drinking or was under the influence of intoxicating liquor while he was working on the plant premises.

"The Arbitrator is under the opinion that the Grievant . . . did violate the company work rules. . . . However, under the circumstances of this case, said violation is insufficient to justify discharge. . . . [T]he Arbitrator is by no means condoning the action of the Grievant, and does not find him free from fault. The actions of the Superintendent and his attitude that the rules were not applicable to him should be considered in mitigating any punishment administered to Grievant.

"There is no question that . . . the rule in question. . . may be enforced in penalty of discharge. . . . [T]he Arbitrator does not believe that discharge is appropriate under these circumstances.

"[T]he Arbitrator believes that the Company established grounds for the imposition of discipline. . . . [D]oubt was created in the mind of the Arbitrator regarding the appropriateness of the discharge . . . .

"[T]he Arbitrator holds that the grievance of Glenn Weems should be partially upheld in that his discharge should be set aside. However, grievant should be deemed suspended from employment from the date the Company discharged him until he applies for reinstatement according to the conditions set out herein below:

"1. Said suspension shall be a part of his employment record with Company.

"2. The Grievant shall be reinstated to his job, provided he makes application therefore [sic] within ten (10) days from the date of this award, but no backpay is awarded. . . . In the event Grievant applies for reinstatement, and the Company declines to reinstate him, then the Grievant shall be entitled to be paid his normal straight-time wages from the time the Company declines to reinstate him until the date of his reinstatement. . . .

"The reinstatement of the Grievant, without backpay on the above conditions, is hereby ordered . . . ."

Inasmuch as the parties to the arbitration filed no written statement of the issues submitted, identification of those issues must be gleaned from the arbitrator's award. There we find it said (1) the arbitration involves Weems' grievance contesting his discharge, (2) the issue is whether Weems was discharged for just cause, (3) the company claims violation of a work rule, (4) the company contends that discharge is authorized discipline for the work rule violation, and (5) the union, on behalf of Weems, contends he did not violate the work rule and, alternatively, if there was a violation of the work rule, it is wrongful of the company to discipline Weems because it had not disciplined others for the same work rule violation.

In his "discussion," the arbitrator necessarily first addressed the question whether there was a work rule violation. He found there was. Later he finds violation of the work rule subjects plaintiff to disciplinary action in the nature of discharge. (The collective bargaining agreement provides that violation of the work rule is ground "for . . . disciplinary action ranging from suspension of work for a specified period of time to immediate discharge.") Then, in the award, the arbitrator finds the actions and attitude of the company superintendent "should be considered in mitigating any punishment administered" and plaintiff's discharge was not appropriate discipline under the circumstances.

In conclusion, the arbitrator "partially upheld" plaintiff's grievance by setting aside the discharge and, upon the condition of plaintiff's application to the defendant, entered the modified discipline of suspension without pay. The imposition of suspension without pay was "partial denial" of Weems' grievance; it implicitly rejected his claim he should not be disciplined.

Plaintiff's position before us is that by reason of the language in the collective bargaining agreement that reads, "[a]ny discharged or suspended employee who is re-instated by the settlement or decision of any grievance shall be paid for all time lost during the period of his discharge or suspension," the modified discipline ordered by the arbitrator was void insofar as it denied back pay. The trial court agreed with that contention. We do not.

Plaintiff does not contend the arbitrator was without "broad power" to fashion an award in resolution of the grievance. Neither is it his position that a modification of the disciplinary penalty for the work rule violation is improper. His position simply is that by reason of the quoted collective bargaining agreement language, the setting aside of his discharge and, upon his application, allowing him to return to employment with the defendant, rendered denial of back pay beyond the power and jurisdiction of the arbitrator. We see the result of the trial court's acceptance of his position to be that plaintiff suffers no real penalty although it was found he was properly subject to discipline.

On appeal, the defendant has been woefully shy in the advancement of any reason to avoid the facially clear collective bargaining agreement language upon which plaintiff relies.

Under plaintiff's theory, if, prior to arbitration, he and the defendant had agreed to a settlement of the grievance under which plaintiff was to be allowed to return to work, they could not have agreed to wage forfeiture for any time after the date of his challenged discharge. As a practical matter, there would be no compromise. That strikes us as an unreasonable and unintended consequence of the collective bargaining agreement language.

In our view, the collective bargaining agreement language at issue applies when the employee is truly reinstated, that is, in those instances when the employee is unconditionally returned to his former status. "Reinstatement means to return to a post previously held." *National Labor Relations Board v. Hearst*, 102 F.2d 658, 663 (9th Cir. 1939). "With respect to the reinstatement of the thirteen employees . . . it may be well to make clear that . . . reinstatement [means] that they be restored to their former position." *National Labor Relations Board v. Planters Mfg. Co., Inc.*, 106 F.2d 524 (4th Cir. 1939). The arbitrator's award did not order such a reinstatement.

We are convinced that as a general rule an arbitrator has the power to modify a disciplinary penalty imposed by management so long as the collective bargaining agreement does not forbid' him to do so and the agreement does not set forth specific penalties to be imposed for work rule violations.

As broad principles, it is said the scope of jurisdiction and power of arbitrators to resolve disputes arising within the context of labor-management relations is derived from and limited to the collective bargaining agreement; arbitrators have no authority to go beyond the terms of the agreement or to consider matters not clearly embraced by it (Updegraff, Arbitration and Labor Relations, p. 111 [3d ed. 1970]); and any award rendered in an arbitration proceeding must derive its essence from the collective bargaining agreement (*Steelworkers v. Enterprise Corp.*, 363 U.S. 593, 597, 4 L.Ed.2d 1424, 80 S.Ct. 1358 [1960]). It also has been recently and often stated:

"[A] labor arbitration dispute is governed by the contract between the company and the union . . . . Moreover, [the arbitrator's] decision will not be disturbed by a court unless he has exceeded the authority given him by the contract." *Norfolk Shipbuilding and Drydock v. Local No. 684*, 671 F.2d 797, 799 (4th Cir. 1982).

"Where . . . arbitration is the method agreed-upon by the parties to resolve their differences, courts are required to grant '. . . wide latitude to the arbitrator to fashion appropriate remedies in the absence of clearly restrictive language [in the bargaining agreement].'" *Sverdrup/Aro, Inc. v. Intern. Ass'n of Machinists*, 532 F. Supp. 143, 145 (E. D. Tenn. 1980).

"[W]here the collective bargaining agreement is silent as to remedies . . . the arbitrator is given wide latitude in fashioning a remedy." *Knox Porcelain Corp. v. Teamsters Local U. No. 519*, 504 F.Supp. 284, 287 (E. D. Tenn. 1980).

"[A]n arbitrator may create a new remedy if it is not prohibited by the Agreement or if the underlying cause is not provided for in the Agreement." *Keen Mountain Const. Co., Inc. v. Chambers*, 481 F. Supp. 532, 536 (W. D.Va. 1979).

The authority of an arbitrator to modify a disciplinary penalty imposed by management upon an employee for an infraction of a work rule is inherent in but distinct from the authority to determine the existence of cause to discipline the employee and the authority to finally settle the grievance.

"In many disciplinary cases, the reasonableness of the penalty imposed on an employee rather than the existence of proper cause for disciplining him is the question an arbitrator must decide. This is not so under contracts or submission agreements which expressly prohibit an arbitrator from modifying or reducing a penalty if he finds that disciplinary action was justified, but most current labor agreements do not contain such limiting clause. In disciplinary cases generally, therefore, most arbitrators exercise the right to change or modify a penalty if it is found to be improper or too severe, under all the circumstances of the situation. This right is deemed to be inherent in the arbitrator's power to decide the sufficiency of the cause for discipline and in his authority to finally settle and adjust the dispute before him." Platt, *The Arbitration Process in the Settlement of Labor Disputes*, 31 J. Am., Judicature Soc'y 54, 58, (1947).

Where the evidence clearly indicates that justice requires a modification of a disciplinary penalty, an arbitrator should, without hesitation, award accordingly. Updegraff, Arbitration and Labor Relations, p. 307.

In *Fabricut, Inc. v. Tulsa General Drivers, Etc.*, 597 F.2d 227, 229 (10th Cir. 1979), an arbitrator's award reducing a disciplinary penalty from discharge to a one-month suspension was affirmed on the ground that, in the absence of a contract specified penalty, the arbitrator could fashion a reasonable penalty to make the contract workable. An arbitrator's modification of a disciplinary penalty was upheld in *Gulf States Tel. Co. v. Local 1692, Int. Bro. of Elec. Wkrs.*, 416 F.2d 198, 202 (5th Cir. 1969). *Lynchburg Foundry Company v. United Steelworkers*, 404 F.2d 259, 261 (4th Cir. 1968), held that in the absence of language in the

bargaining agreement specifically denying the arbitrator the latitude of judgment in formulating a remedy, an arbitrator is free to modify a penalty imposed on an employee. "Arbitral determination not only of the existence of misconduct but of the fitness of the punishment is routinely grist for the arbitral mill." B. Dunau, *Three Problems in Labor Arbitration*, 55 Va. L. Rev. 427, 451 (1969).

The essence of plaintiff's grievance was that he was not guilty of violation of the subject work rule and, alternatively, if he was guilty, he should not be disciplined. The arbitrator found against him on both counts. The collective bargaining agreement does not prohibit modification of disciplinary penalties as a part of arbitration. Plaintiff has no room to complain of the modified discipline. The denial of back pay was not void as beyond the arbitrator's jurisdiction and power. Further, if back pay was not a subject upon which the arbitrator could act because it was not a "submitted issue," neither was the nature of the discipline imposed or to be imposed for the violation found to have occurred. It is inconsistent to accept as proper the arbitrator's order reducing the discipline to suspension and to complain of denial of back pay.

Reversed.

Upon request under Rule 7.04 (230 Kan. lx) publication of this opinion is ordered.

MEYER, J.: I dissent. Generally, an arbitration award is considered final and binding, and thus not subject to collateral attack, insofar as it relates to matters properly submitted to and considered by the arbitrator.

"Where parties have agreed to be bound by a submission to arbitration, errors of law and fact, or an erroneous decision of matters submitted to the judgment of the arbitrators, are insufficient to invalidate an award fairly and honestly made. Nothing in an award relative to the merits of the controversy as submitted, even though incorrectly decided, is ground for setting aside the award in the absence of fraud, misconduct, or other valid objections." *Evans Electrical Constr. Co. v. University of Kansas Med. Center*, 230 Kan. 298, Syl. ¶ 5, 634 P.2d 1079 (1981).

This rule in favor of finality and validity does not, however, totally preclude a successful judicial attack on an arbitration award. Certain grounds for avoidance are recognized. One paramount objection to validity is want of proper authority to issue a

particular ruling. This ground of objection was recognized in Kansas long ago. See *Clark v. Goit*, 1 Kan. App. 345, 353, 41 Pac. 214 (1895).

This same rule has governed more recent cases also.

"It is stated in 3 Am. Jur., Arbitration and Award, § 130, p. 951:

" 'The award of arbitrators *acting within the scope of their authority* determines the rights of the parties as effectually as a judgment secured by regular legal procedure, and is as binding as a judgment *until it is regularly set aside or its validity questioned in a proper manner.* . . .'

"Relief will be granted against an award which the arbitrators had no jurisdiction to make. Thus, in the instant case we must inquire whether the Board of Arbitration has exceeded the limitation placed upon its contractually invested authority by the Agreement, since the parties to such an Agreement are bound by the arbitrators' award only to the extent and in the manner prescribed by the contract and only if the award is rendered in conformity thereto. [Citations omitted.]" *Coleman v. Local No. 570*, 181 Kan. 969, 976-77, 317 P.2d 831 (1957).

In determining whether the arbitrator herein exceeded his powers, one must first define those powers. Generally, the agreement is the source of authority, and its terms define and limit the arbitrator's powers. *State v. Thomas Constr. Co.*, 8 Kan. App. 2d 283, 655 P.2d 471 (1982). In construing an agreement to arbitrate, the courts should apply the same rules of construction as to any contract. *Wagoner v. City of Hutchinson*, 169 Kan. 44, 48, 216 P.2d 808 (1950). The primary rule of construction for contracts is that the court should enforce the intention of the parties, as evidenced by the plain and unambiguous wording of their contract. *Martin v. Edwards*, 219 Kan. 466, 473, 548 P.2d 779 (1976). The courts will not presume that it was the intention of the parties that the arbitrator be allowed to determine the extent of his own jurisdiction. *Coleman v. Local No. 570*, 181 Kan. at 978.

Examining the collective bargaining agreement here involved, one finds that the grievance procedure is addressed entirely in section 32. Some important language from that section deserves attention.

"Arbitrator does not have the right or power to add to, delete from, amend, change or modify the terms of this agreement.

. . . . .

"Any discharged or suspended employee who is re-instated by the settlement or decision of any grievance shall be paid for all time lost during the period of his discharge or suspension."

This language is plain and definite. It allows for no leeway in its construction. It clearly prohibits the arbitrator from departing in any way from the terms of the agreement. It just as clearly specifies one of these terms—that all employees who are ordered reinstated following suspension or dismissal must be paid for all time lost. The arbitrator's award herein patently violated these mandates in its denial of back pay. For this reason, that much of the award is void. The district court so held, and should have been affirmed on that ground.

The majority relies on the rule that an arbitrator is endowed with wide latitude and discretion in the fashioning of remedies pursuant to his issuance of an award. At the outset, let me state that I do not take issue with this general statement, per se. It is a correct statement of the prevailing rule of law on this subject. Furthermore, it is a principle rooted in wisdom and practicality.

But, like all rules, it is not without its exceptions. The operative exception in the instant case is that which restricts such latitude and discretion, according to language of limitation contained in the agreement to arbitrate. This exception is as universally recognized as the general rule from which it derives. Attention is directed to the numerous citations found in the majority opinion herein. The careful reader will have already noted what I now point out, that each and every opinion cited by the majority recognizes the aforementioned exception as a qualifier to the general rule.

To avoid this exception to the rule, the majority ascribes to the term "reinstatement," a meaning which is far too restrictive. It is held that this term, as used in the collective bargaining agreement, refers only to cases where an employee is entirely vindicated in the arbitration proceedings. Thus, according to the majority's reasoning, appellee was not "reinstated" by the arbitration award, even though it gave him the right to demand his return to his previous position. The majority offers no alternative term to describe the award's effect on appellee. I submit that "reinstatement" is the only proper descriptive label for that effect, and that its use in the collective bargaining agreement was meant to encompass situations such as that now before us. The majority's interpretation of "reinstatement" is an unreasonable one; it departs from the common understanding of that term, and it impresses upon the agreement a meaning clearly beyond

the intention of the parties, in direct contravention to the cardinal rules for construction of contracts.

This scrivener would further note that there is a second reason why the award was void insofar as it denied back pay—because that issue was not submitted to the arbitrator. The rule is well established that an arbitrator is limited in his decision to those issues properly presented by the parties; an issue not submitted is beyond the scope of the award.

" 'A party may, even at common law, set up, in defense to an action on an award, any matter which shows that the arbitrator has not pursued his authority, either in not determining some matter brought before him which he ought to determine, or in determining some matter which he had no authority to determine. The ground on which these cases stand is, not that the award is bad for misbehavior of the arbitrator, but that there is no award within the terms of the submission.' (5 C.J. 193.)" *Graff v. Insurance Co.*, 107 Kan. 648, 652, 193 Pac. 356 (1920).

And in *Retail Store Employees U. Loc. 782 v. Sav-On Groceries*, 508 F.2d 500, 502 (10th Cir. 1975), the court adopted as the better rule one which restricts the subject matter of an arbitration to those issues agreed to and submitted by the parties. And see also *Kansas City Luggage & Nov. Wkrs. U. v. Neevel Luggage Mfg. Co.*, 325 F.2d 992 (8th Cir. 1964).

In the case at bar, the arbitrator's own award indicates that he considered only one issue to be involved.

"The Grievant was discharged on August 29, 1980, and the issue was whether the Grievant, Glenn Weems, was discharged for just cause on August 29, 1980."

This singularity of issue was recognized by the district court, and was made one of its findings of fact in the court's journal entry.

"The sole issue present [*sic*] to the arbitrator in this case was whether or not the Plaintiff's discharge was proper."

From the foregoing, it becomes apparent that the arbitrator not only transcended his powers under the agreement, but also exceeded the scope of his submission in determining the issue of back pay. Appellant would have this court sustain the denial of back pay. It cites "The Steelworkers' Trilogy," which landmark decisions stand, *inter alia*, for the proposition that arbitrators must be allowed great latitude in fashioning remedies. This same argument was posed in *Retail Store Employees U. Loc. 782 v. Sav-On Groceries*, 508 F.2d 500, where the issue was whether

the award of back pay was within the scope of the submission to arbitration. The court, in *Sav-On*, rejected an implied power to exceed the submission in the fashioning of remedies. See 508 F.2d at 503. Concluding that the rule of *Sav-On* is the better guide, I would rule against appellant on this point.

I am not persuaded by the majority's argument that it is logically inconsistent for appellee to accept such part of the award as ordered his reinstatement, but to attack such part as denied him back pay for time lost. As I have earlier noted, the arbitrator was free to fashion an appropriate remedy, within the confines of the agreement. He fashioned a proper remedy—reinstatement—based on his conclusion that discriminatory enforcement of the particular work rule removed the "just cause" from appellee's discharge for violation thereof. Having made this determination, and fashioned this remedy, he attempted to go one step further, and deny appellee his back pay. This was beyond his powers and authority under the agreement, and hence, was void.

The majority decision distresses me for yet another reason. I am of the opinion that the majority is today reversing a finding of fact made by the trial court. As was cogently expressed in *Aslin v. Seamon*, 225 Kan. 77, 78, 587 P.2d 875 (1978), it is not the province of an appellate tribunal to reweigh the evidence and adjust the lower court's findings of fact according to its own beliefs. This rule is long-standing, and the cases applying it abound. See *International Petroleum Services, Inc. v. S & N Well Service, Inc.*, 230 Kan. 452, Syl. ¶ 8, 639 P.2d 29 (1982), and *City of Council Grove v. Ossmann*, 219 Kan. 120, Syl. ¶ 1, 546 P.2d 1399 (1976). The majority has regrettably departed from this rule.

To summarize my reasoning herein, while an arbitrator's award is generally final and binding, this is true only insofar as the award is within the arbitrator's authority, as prescribed by the employment contract. Here, the collective bargaining agreement expressly provided that any employee reinstated after suspension or termination shall be paid for all time lost. The agreement is specific and unequivocal, to the effect that whenever an employee, as the result of an arbitrator's award, is reinstated, that employee is entitled to recover, in full, his back pay. The agreement thus circumscribed the arbitrator's powers,

and having ordered appellee's reinstatement, he was without authority to deny appellee his back pay. Also, the issue as to back pay was not expressly submitted to the arbitrator. This, too, is an adequate legal ground for setting aside the award insofar as it denied back pay to appellee.

I am cognizant of the argument that my reasoning herein has the effect of interpreting the collective bargaining agreement in such a way as to hamstring the arbitrator in his fashioning of remedies. It is not my intent to espouse a rule restricting an arbitrator's power or discretion beyond that level of restriction which may be found in the particular agreement to arbitrate. However, since the arbitrator herein was without authority to go beyond the powers allocated to him in the collective bargaining agreement, and since that agreement in specific terms stated that reinstated employees shall receive back pay, it is clear that the judgment of the district court was correct. That court was fully within its powers to approve the arbitrator's award in all its other respects, but to set such award aside insofar as it denied back pay to appellee, contrary to the specific terms of the collective bargaining agreement. Such provisions in the agreement being unequivocal and unambiguous, the district court was, and this court is, without power to alter said terms of the contract, because any such alteration would amount to judicial revision of the contract between the parties. *Wood v. Hatcher,* 199 Kan. 238, Syl. ¶ 3, 428 P.2d 799 (1967).