(573 P.2d 1081)
No. 48,924

CITY OF DESOTO, KANSAS, a municipal corporation, *Appellee*, v. CENTURION HOMES, INC., *Appellant*.

Petition for review denied December 21, 1977.

Opinion filed October 21, 1977.

*Joseph N. Vader* of Hackler, Londerholm, Speer, Vader & Austin, of Olathe, for the appellant.

*David J. Waxse* of Payne & Jones, Chartered, of Olathe, for the appellee.

Before ABBOTT, P.J., SPENCER and PARKS, JJ.

SPENCER, J.: This is an appeal from a judgment of the district court granting a permanent injunction against further construction and ordering the removal of a structure in DeSoto, Kansas. The court found reasonable a decision by the governing body of

the city that the structure in question was in violation of existing zoning ordinances in that it was a mobile home and not a modular home.

On January 31, 1975, appellant submitted to the city of DeSoto an application for a building permit for the construction of a dwelling at 900 Jewett Drive. The application stated that the home would be single-family with a floor area of 1,675 sq. ft.; that construction would be wood frame, after which was handwritten "modular"; that the foundation would be poured concrete; and that the roof would be composition shingle.

On February 3, 1975, the city building inspector issued the permit pursuant to section 19 of Ordinance No. 340 of the city of DeSoto. That section of the ordinance provides in part:

"No [building] permit shall be issued for any building, structure, construction . . . unless the same be in conformity in every respect with all the provisions of this Zoning Ordinance.

. . . . . . . . . . . . . . . . . . .

"A permit may be revoked by the Building Inspector at any time prior to the completion of the building or structure for which the same was issued, when it shall appear that there is departure from the plans, specifications or conditions as required under terms of the permit, that the same was procured by false representation or was issued by mistake, or that any of the provisions of the Zoning Ordinance are being violated. . . ."

Construction commenced and continued until March 10, 1975, when a notice of violation was served on appellant by the building inspector indicating a violation of the city's Ordinance No. 396 in that a double wide mobile home must first be submitted to the planning commission for approval to be permitted in an area outside an approved mobile home park. That ordinance provides in part:

"SECTION ONE: (DEFINITIONS): *Mobile Home.* A residential structure, assembled in total or in not more than three sections at a factory, and transported over the road by truck or temporary wheel carriage to its destination.

. . . . . . . . . . . . . . . . . . .

"*Mobile Home, Double Wide.* A mobile home, as defined above, and having been built in two section sections, approximately of equal length, at the factory, which two sections are transported over the road separately, with assembly into one structure of a width of not less than twenty (20) feet occurring at the destination. . . .

"*Modular Home.* A residential structure, assembled in total or in several sections at a factory, and transported over the road by truck to its destination. A modular home, as distinct from a mobile home, shall have exterior building materials and appearance similar to the customary single family structures in the

neighborhood, and shall be permanently situated on a concrete slab or foundation.

. . . . . . . . . . . . . . . . . .

"SECTION TWO: (MOBILE HOMES—WHERE PERMITTED): . . . A double wide mobile home may be permitted in an approved mobile homes park or on a foundation on a lot which complies with all of the regulations of the zoning and subdivision ordinances of the City of DeSoto. Such double wide structure to be located outside an approved park shall first be submitted to the Planning Commission for review as to architectural conformity with the surrounding neighborhood, based upon the following:

"A. The physical condition of the structure is sound, well maintained, and of neat appearance.

"B. The proposed site of the structure is not in a neighborhood which contains homes of size and value sufficiently higher than will result from the establishment of the double wide mobile home that the contrast in appearance will depress property values in the neighborhood. . . ."

There is no evidence as to any ordinance restricting the placement of modular homes.

On March 15, 1975, at a special meeting of the planning commission, appellant was advised that it could proceed with the construction if it would agree in writing to construct brick siding at various parts of the exterior and a covered porch over the front entry as shown on plans presented to that commission. There is no evidence as to whether this action of the planning commission was based on a determination that the structure was a modular or a mobile home, which after the requested modifications would meet the requirements of Section Two (A & B) of Ordinance No. 396.

Appellant continued construction but on March 22, 1975, a special meeting of the governing body of DeSoto was held and it was determined that the structure was not a modular home as defined in Section One of Ordinance No. 396 for the following reasons:

"1. The structure in question was not transported over the road by truck to its destination and was, in fact, transported by wheel carriage.

"2. That the structure in question does not have exterior building materials similar to the customary single family structures in the neighborhood.

"3. That the structure in question does not have an appearance similar to the customary single family structures in the neighborhood."

The building permit was revoked; appellant was given thirty days to obtain a proper building permit; and the "appropriate City authority" was ordered to take whatever action was necessary to remove the structure in the event of failure to secure such permit.

No further action was taken by appellant and the city filed suit seeking a permanent injunction. Trial was to the court and the trial judge, after considering the evidence and having viewed the structure in question and the surrounding area, entered findings of fact and conclusions of law in part as follows:

" . . . The plaintiff City claimed these were mobile homes lined up side by side. The defendant claims they are modular homes. The Court believes that really from the evidence the tendency would support more that they lean towards being mobile homes side by side, and I think you can't ignore the labeling on the homes as one of the factors in this, but I don't think it makes an awful lot of difference. When you review the Ordinance 396 and you talk about modular home and the definition and you talk about mobile home, the Court's reasoning in this case is contained in both of them.

. . . . . . . . . . . . . . . . . . . .

"The thing that has impressed the Court both from his examination of the area . . . there is no way that . . . you . . . can convince me . . . that those exhibits of those homes in this area are of such structure that they are comparable to what conversely is . . . the structure in question. I think we should show some consideration for these neighbors . . . ."

Appellant claimed estoppel, and to this the trial court stated:

"Very frankly to the Court I think this is a very sloppy handling of city affairs. They led Mr. Thomas to believe that he could proceed and then they withdrew and Mr. Thomas had done some—spent some monies and expenditures. There could easily be an issue of estoppel in the matter. I am not going to rule on it in that way. I think very conceivably Mr. Thomas may have some redress in other sources . . . .

. . . . . . . . . . . . . . . . . . . .

"I think the City should not have led Mr. Thomas into the belief that he could do it, but conversely I think they do have a right to rescind the thing. . . ."

Issues presented are:

1. Did the district court err in finding reasonable the decision of the governing body that the structure was a mobile home as distinguished from a modular home?

2. Did the district court err in failing to consider the issue of whether the city was estopped from revoking the building permit and should the city be so estopped?

The rules of review have been succinctly stated:

"The rules for judicial review of municipal zoning ordinances and determinations are well established. 'It must be understood that the governing body has the right to prescribe zoning, the right to change zoning and the right to refuse to change zoning.' [Citation omitted.] The power of the district court, in reviewing zoning determinations, is limited to determining (1) the lawfulness of the action taken, that is, whether procedures in conformity with law were employed, and (2)

the reasonableness of such action. In making the second determination, the court may not substitute its judgment for that of the governing body and should not declare the action of the governing body unreasonable unless clearly compelled to do so by the evidence. [Citations omitted.] 'There is a presumption that the governing body acted reasonably and it is incumbent upon those attacking its action to show the unreasonableness thereof', by a preponderance of the evidence. [Citations omitted.] The mark of unreasonable action by zoning authorities is '. . . when the action is so arbitrary it can be said it was taken without regard to the benefit or harm involved to the community at large including all interested parties and was so wide of the mark its unreasonableness lies outside the realm of fair debate.' [Citation omitted.]" (*Highway Oil, Inc. v. City of Lenexa,* 219 Kan. 129, 132, 547 P.2d 330.)

"In reviewing a district court's judgment, this court, for the purpose of determining whether the district court observed the requirements and restrictions placed upon it, will make the same review of the administrative tribunal's action as does the district court. [Citations omitted.]" (*Rickard v. Fundenberger,* 1 Kan. App. 2d 222, 224, 563 P.2d 1069.)

The lawfulness of the action by the governing body is not challenged on procedural grounds. Accordingly, the issue on review is clearly limited to the reasonableness of that action.

Apparently, the city was confronted with a situation where its existing ordinance did not restrict the placement of modular homes. The city has not argued otherwise and a reading of the zoning ordinances in question fails to reveal any such restrictions. Therefore, if the structure was a modular home as defined in the ordinance, nothing could prevent its placement at this location. Mobile homes, however, were restricted to mobile home parks, with the exception of double wide mobile homes which could be placed "on a foundation on a lot" which otherwise complied with zoning and other regulations. Before placing such double wide mobile homes outside a mobile home park, however, the planning commission must review them for "architectural conformity with the surrounding neighborhood" based on physical condition, appearance, and the effect on property values. Ordinance No. 396 defined "modular home" (1) as transported over road by truck to its destination (whereas "mobile home" is defined as transported by truck or temporary wheel carriage); and (2) "as distinct from a mobile home" having "exterior building materials and appearance similar to the customary single family structures in the neighborhood . . . ." Although we consider it of little consequence as to how the structure was transported, the governing body determined that the structure in question failed to meet both of these standards.

It is of note that this action is one by the city for an injunction and was not brought by appellant under K.S.A. 12-712 to determine the reasonableness of the ordinance. Although a question exists as to whether the action of the governing body was reasonable, no issue has been raised as to whether the ordinance itself is reasonable. The pretrial order delineated an issue of whether the ordinance was so vague and indefinite as to be unconstitutional but no argument was presented to the trial court on that issue, the trial court made no ruling in that regard, and appellant has not argued the point to this court. Its strongest arguments are that the city was unreasonable and the trial court erred in limiting the definition of "neighborhood" as used in "similar to the customary single family structures in the neighborhood" to those houses on Jewett Place and did not include houses on surrounding streets.

One of the cases cited by appellant (*State ex rel. Saveland P.H. Corp. v. Wieland,* 269 Wis. 262, 69 N.W.2d 217) states that "neighborhood," although extending further than immediately adjoining property, must be determined by the facts of each case. The other cases cited are clearly in other contexts or equally vague. It would seem that the definition must remain vague and that the question must be decided on a case-by-case basis. It has been said:

"The mere fact that property in a restricted area adjoins or is close to property in a nonrestricted area does not necessarily render the ordinance invalid, since if there is to be zoning at all the dividing line must be somewhere, with the result that certain desirable neighborhoods adjoin others less desirable  . . . ." (82 Am. Jur. 2d, Zoning and Planning § 37, p. 443.)

The city knew of the quality of structures on surrounding streets, as well as of those on Jewett Place, and the trial court viewed the area. We conclude that in this case the trial court did not err in limiting its definition of neighborhood, as used in the ordinance in question, to Jewett Place in the city of DeSoto, which appears to be a distinct area unto itself.

As to the overall question of reasonableness, there was conflicting testimony as to whether the structure had exterior building materials and appearances similar to other homes in the neighborhood. Given the rule of review that where a question is debatable the reviewing court must not substitute its judgment for that of the zoning authority (*Houston v. Board of City Commissioners,* 218 Kan. 323, 543 P.2d 1010), the reasonableness of the city's action must be upheld.

There is no doubt that equitable estoppel can be applied to a city in Kansas and that such estoppel can be in relation to a zoning matter. *Benson v. City of DeSoto,* 212 Kan. 415, 510 P.2d 1281. In *Benson,* the city, upon request of a developer, annexed a tract of land and rezoned it for his requested special use—a mobile home park. Thereafter, the developer spent a considerable sum in preparation of a plat for the park but, before submitting the plat for approval, a new city commission was elected. When the plat was submitted, the city commission refused to accept it and challenged the rezoning of the annexed tract for technical reasons. The Supreme Court held the city estopped to deny the validity of its own ordinance and ordered approval of the plat.

The distinction between the cases cited from other jurisdictions by the two sides in this case is that they stand for two distinct principles: (1) The city may be estopped from revoking a validly issued building permit, as where *e.g.* the zoning is changed after issuance of the permit and the city seeks a retroactive enforcement (82 Am. Jur. 2d, Zoning and Planning § 237, p. 762); and (2) a building permit issued in violation of law or under a mistake of fact confers no right, may be revoked at any time, and does not estop the city from doing so (82 Am. Jur. 2d, Zoning and Planning § 244, pp. 776-777).

The question of estoppel will be determined by whether the city was reasonable in holding that the structure in question was actually a mobile home. If so, it follows that the permit was issued under mistake of fact and such cannot be the basis for estoppel. Nor may the action of the planning commission be considered the basis for estoppel. In *Houston v. Board of City Commissioners,* supra, it was said:

"The function of a planning commission is advisory only. The final authority in zoning matters rests with the governing body possessing legislative power." (218 Kan. 323, Syl. 3.)

Appellant must be presumed to know the law and as such to know that the action of the planning commission can be overturned by the governing body of the city.

In *Skaggs v. City of Pratt,* 183 Kan. 424, 327 P.2d 1083, the plaintiff alleged that he tore out an old sidewalk in front of his store and replaced it with a new one. In doing so, he relied on a slant and grade approved and aligned by the city engineer. The

city engineer, in turn, was required by city ordinance to establish and align sidewalk grades. After the new sidewalk was in place, the city passed a resolution condemning it and required plaintiff to replace it, again with grade and alignment determined by the city engineer. The Supreme Court noted that the first sidewalk was put in with reliance on the acts of the city engineer *as authorized by city ordinance.* In the case at bar the city ordinance authorized the building inspector to issue the building permit *in accordance with the zoning ordinance.* If a permit is issued by mistake to a project which does not comply with the zoning ordinance, it cannot be said to be authorized by the city, and *Skaggs* is distinguishable.

Judgment affirmed.