(697 P.2d 72)

No. 56,798

Robert L. Rieke Building Company, Inc., *Appellee,* v. City of Olathe, *Appellant.*

Opinion filed March 21, 1985.

*Christopher B. Bacon* and *Richard L. Roberts,* of Lowe, Terry & Roberts, of Olathe, and *Thomas A. Glinstra,* city attorney, for the appellant.

*John Anderson, Jr.,* and *Brian C. McCormally,* of Anderson, Lastelic & Buchmann, of Overland Park, for the appellee.

Before FOTH, C.J., MEYER and BRISCOE, JJ.

BRISCOE, J.: This is a zoning case in which the City of Olathe appeals the district court's determination that the City acted unreasonably in rezoning a 25-block tract. The City also challenges an award of damages to Robert L. Rieke Building Company, Inc., (Rieke); Rieke cross-appeals, contending the damage award was inadequate.

In 1970, the City of Olathe adopted a zoning map which zoned the area in question R-2, allowing both single-family and duplex residential construction. In 1973 the area came under an urban renewal plan known as the Fairview Neighborhood Development Program. The general urban renewal plan was later amended by Disposition Supplement No. 1. Rieke was high bidder on all but two of the lots advertised for sale in 1973. Between 1975 and 1979, Rieke purchased lots within the development area from the City, from the Urban Renewal Agency, and from individuals. It is apparent from the record that Rieke made a significant financial commitment.

Rieke began developing its properties through construction of single-family homes. Between 1975 and 1978, plaintiff constructed 45 single-family residences in the area, with mixed results financially.

The record also reveals some zoning activity during this period of time. In 1977, Rieke requested downzoning on a tract in order to comply with driveway requirements in construction of four duplexes. The Olathe City Commission denied the request. In 1979, Rieke requested and was granted a variance to permit construction of five duplexes on an area that was five percent short on square footage requirements. This tract was within the area later rezoned R-1, but outside the urban renewal area.

Also in 1979, the Olathe Housing Authority invited proposals on a 30-unit low rent housing program for the Fairview area. Rieke's proposal was unanimously selected and submitted to the federal Department of Housing and Urban Development (HUD).

In an apparently unrelated plan for construction of a fourplex, Rieke applied for R-3 zoning of three lots. Obviously aware of the proposed low rent housing proposal, many Fairview residents appeared at the December 10, 1979, public hearing in opposition to the zoning request. The hearing was continued to January 14, 1980.

In the interim, the Olathe Housing Authority moved to reject all proposals for the low rent housing project and readvertise for proposals on sites elsewhere in Olathe. HUD approved.

Hearings on Rieke's R-3 zoning request continued with 123 residents filing a petition in favor of R-1 zoning for the entire Fairview neighborhood. Hearings then commenced on the R-1 zoning request with Rieke and others appearing in opposition. Eventually, the Olathe City Commission adopted Ordinance 80-24 rezoning a 25-block area in the Fairview neighborhood from R-2 to R-1.

In June, 1980, Rieke sued the City of Olathe and the Olathe Housing Authority, attacking the rezoning as unreasonable and alleging breach of contract based upon the urban renewal plan, the sale of land by special warranty deeds, and the conduct of the parties. The Housing Authority was later dismissed with prejudice on stipulation of the parties. After trial to the court, the district judge found the City's rezoning unreasonable under the standards enunciated in *Golden v. City of Overland Park*, 224 Kan. 591, 584 P.2d 130 (1978), ordering the property to revert to its former R-2 zoning classification. The court further found the City estopped to rezone Rieke's land. The court found breach of contract and awarded Rieke $20,500 in damages. The City appeals all rulings; plaintiff cross-appeals, challenging the adequacy of the damages. This court granted the City of Olathe's motion for stay pending appeal.

We first address whether Ordinance No. 80-24, which rezoned an approximately 25-block area from R-2 to R-1, was arbitrary, capricious, and unreasonable.

The well-settled scope of judicial review of zoning decisions is summarized in *Combined Investment Co. v. Board of Butler County Comm'rs*, 227 Kan. 17, 28, 605 P.2d 533 (1980):

"(1) *The local zoning authority, and not the court, has the right to prescribe, change or refuse to change, zoning.*

"(2) *The district court's power is limited to determining*
  *(a) the lawfulness of the action taken, and*
  *(b) the reasonableness of such action.*
"(3) There is a presumption that the zoning authority acted reasonably.
"(4) The landowner has the burden of proving unreasonableness by a preponderance of the evidence.
"(5) A court may not substitute its judgment for that of the administrative body, and should not declare the action unreasonable unless clearly compelled to do so by the evidence.
"(6) Action is unreasonable when it is so arbitrary that it can be said it was taken without regard to the benefit or harm involved to the community at large, including all interested parties, and was so wide of the mark that its unreasonableness lies outside the realm of fair debate.
"(7) Whether action is reasonable or not is a question of law, to be determined upon the basis of the facts which were presented to the zoning authority.
"(8) *An appellate court must make the same review of the zoning authority's action as did the district court.*" Emphasis added.

Cited with approval in *Taco Bell v. City of Mission,* 234 Kan. 879, 885-86, 678 P.2d 133 (1984). See also *Golden v. City of Overland Park,* 224 Kan. at 595-96; *Highway Oil, Inc. v. City of Lenexa,* 219 Kan. 129, 132, 547 P.2d 330 (1976); *Gaslight Villa, Inc. v. City of Lansing,* 213 Kan. 862, 865-66, 518 P.2d 410 (1974); *Arkenberg v. City of Topeka,* 197 Kan. 731, 734-35, 421 P.2d 213 (1966).

In the present case, only the reasonableness of the zoning action is challenged. To determine whether the action was reasonable, we apply the eight criteria enunciated in *Golden v. City of Overland Park,* 224 Kan. at 598.

■ *Character of the neighborhood.*

The parties disagree over the description of the "neighborhood" in question. The area which Rieke proposed as the "neighborhood," and the district court adopted, is bounded by undeveloped and unplotted land lying north of Taft Park, by Highway K-7 on the west, by Santa Fe Avenue on the south, and by the Atchison, Topeka & Santa Fe Railroad on the east. The City focused on the smaller rezoned area as being the "neighborhood," about 25 city blocks located generally west of Willie Street and north of Poplar Street.

The character of the larger area is low density residential consisting of single-family residences interspersed with well over 100 existing duplexes and multi-family dwellings. The smaller area is predominantly single-family dwellings.

The definition of the "neighborhood" under consideration is

to be determined on a case-by-case basis. *City of DeSoto v. Centurion Homes, Inc.*, 1 Kan.App.2d 634, 639, 573 P.2d 1081, *rev. denied* 225 Kan. 843 (1977). Both parties key their description of the neighborhood to the same general area. In the testimony before the Planning Commission, an area of single-family dwellings *buffered* by R-2 and R-5 zoning was described. The district court found, and Rieke agrees, that there is no homogenous grouping of single-family dwellings but rather a gerrymandered area carved out of a larger neighborhood that *includes* the buffer areas.

It is not unreasonable for the City to look to the 25-block rezoned area in its determination of "neighborhood." It is a readily definable area with a commonality of housing. The rough-edged perimeter of the area results from the exclusion of as many existing duplexes as possible to remain R-2 and serve as a buffer to the existing single-family dwellings.

■ *Zoning and uses of properties nearby.*

At the March 10, 1980, meeting of the Planning Commission, the professional staff indicated that zoning to the east, south, and west was R-2, to the north R-1, and to the northwest R-3. City Planner Roger Peterson generally agreed, although he indicated some R-5 and M-1 zoning existed to the south as well as some industrial zoning and special use permits to the west. There is no serious dispute among the parties as to the zoning and uses of the property surrounding the rezoned area.

■ *Suitability of the subject property for the uses to which it has been restricted.*

The district court emphasized the number of existing duplexes in the larger neighborhood area, over 100, and the suitability of Rieke's vacant lots for duplex construction. The professional staff reported to the Planning Commission that the area to be rezoned consisted primarily of single-family homes, many vacant lots, two churches, two parks, and seven duplex structures.

■ *Extent to which removal of the restrictions will detrimentally affect nearby property.*

There was no testimony that the more restrictive zoning would detrimentally affect nearby property. The detriment was to Rieke, who owned 21 eighty-foot lots suitable for duplex development within the rezoned area.

■ *The length of time the subject property has remained vacant as zoned.*

Rieke testified that he constructed 45 single-family homes in the area between 1975 and 1978, but that he had never obtained a building permit for a duplex.

■ *The relative gain to the public health, safety, and welfare by the destruction of the value of Rieke's property as compared to the hardship imposed on the individual landowner.*

The district court found this property had been rezoned in direct response to neighborhood outcry over proposed publicly subsidized housing, a "plebiscite of the neighbors" prohibited by case law. *Waterstradt v. Board of Commissioners,* 203 Kan. 317, 320, 454 P.2d 445 (1969); *Arkenberg v. City of Topeka,* 197 Kan. at 738. Although the neighbors' "wishes are to be considered, . . . the final ruling is to be governed by the basic consideration of the benefit or harm involved to the community at large [citation omitted]." *Arkenberg,* 197 Kan. at 738. In the present case, it is clear the neighbors set the rezoning process in motion, but benefits to the community would accrue in preserving an area of predominantly single-family residences. The value of Rieke's lots is diminished, but it is a decline in value only as to *anticipated* uses. See *Houston v. Board of City Commissioners,* 218 Kan. 323, 543 P.2d 1010 (1975).

■ *The recommendations of permanent or professional staff.*

The professional staff recognized there was no way to please all parties, but recommended the rezoning as "appropriate and logical" since "the vast majority of the property is presently being used at R-1 units." Appellee attacked the recommendation as inconsistent with a prior R-3 recommendation. Roger Peterson testified the R-1 recommendation resulted from a more comprehensive analysis of existing uses than had occurred earlier. He denied public protest had a bearing on his opinion.

■ *The conformance of the requested change to the adopted or recognized master plan.*

Peterson testified the rezoning was in conformance with the city plan; however, Ronald Bonjour, a consulting civil engineer, testified that either R-1 or R-2 zoning would be in conformance.

Given our scope of review in zoning cases, which is the same review of the zoning authority's action as the district court, we cannot conclude after review of the *Golden* criteria that the

rezoning in question was so unreasonable as to be beyond the realm of fair debate.

We next consider whether there was a contract, actual or implied, which bound the City not to rezone from R-2 to R-1 those lots owned by Rieke and subject to the use restriction.

The district court found the City breached a contract with plaintiff by limiting development to one housing type in violation of the Urban Renewal Plan and Disposition Supplement. "Regardless of the construction of a written instrument made by the trial court, on appeal the instrument may be construed and its legal effect determined by the appellate court." *Hall v. Mullen,* 234 Kan. 1031, 1035, 678 P.2d 169 (1984).

Rieke contended, and the district court found, breach of the land use density provisions in the Urban Renewal Plan and Disposition Supplement No. 1.

The relevant provisions of the Urban Renewal Plan are:

"Part C. GENERAL LAND USE PLAN

. . . .

"2. Description of Predominant Land Use Categories

"a. Residential

"(1) Low Density - This use category requires a density of not fewer than two families nor more than 12 families per net acre devoted to residential uses. This density requirement is not interpreted as requiring only one housing type. Housing units may be located in single, two family or multi-family dwellings provided that a net residential density of two to 12 dwelling units per acre is maintained."

"Part E. LAND DISPOSITION

". . . All development or redevelopment of private land will conform to controls and standards for specific disposition parcels included in supplements to this plan."

Disposition Supplement No. 1 provides in relevant part:

"1. Land Use Provisions and Building Requirements

"a. Land use shall be as indicated on the Land Use Plan and shall be restricted entirely to low density residential redevelopment except for one commercial neighborhood convenience center.

. . . .

"Residential: Low density residential use of not fewer than two families nor more than twelve families per net acre devoted to residential uses are allowable."

The contracts for sale of land entered between the City and Rieke bound both to the conditions of the Urban Renewal Plan. Furthermore, special warranty deeds conveyed the property

subject to conditions in the Urban Renewal Plan and approved modifications.

The City argues there is no contract because to contract away statutory duties is beyond the scope of its powers, citing *Landau v. City of Leawood,* 214 Kan. 104, 519 P.2d 676 (1974), and *Weil & Associates v. Urban Renewal Agency,* 206 Kan. 405, 479 P.2d 875 (1971). The contract at issue here does not delegate the authority to zone and appears to be precisely the kind envisaged in the Kansas Urban Renewal Law, K.S.A. 17-4742 *et seq.,* as specifically set forth in K.S.A. 17-4750(a).

The City also argues that, even if there is a contract, there has been no breach because Rieke has not exhausted its administrative remedies by applying for R-2 zoning in the newly rezoned area. This would required Rieke to do a superfluous act.

The issue before us is instead an issue of contract interpretation. "When unambiguous, a contract must be enforced according to its terms, given their plain, general and common meaning, so as to give effect to the intention of the parties at the time they contracted." *Vanderpool v. Higgs,* 10 Kan.App.2d 1, Syl. ¶ 1, 690 P.2d 391 (1984).

The land use plan requires low density housing which encompasses a range of structures. The question is whether the sentence "This density requirement is not interpreted as requiring only one housing type" precludes the City from rezoning part of the area to single-family homes. That sentence states that the urban renewal area may contain different types of low density housing, but the sentence does not preclude single-family housing, which is a type of low density use. At the time of this zoning change, the city attorney rendered an opinion that "[t]he city would be obligated by its zoning procedures to protect Mr. Rieke's ability to meet the obligations imposed upon him by the low density residential requirements." He concluded, however, that "the city still has the power to rezone property in the Fairview Area to R-1, R-2, or R-3, since the rezoning classifications, by definition, are included in the low density residential requirements of the Urban Renewal Plan."

This interpretation is correct. Rezoning to R-1 was within the City's authority and was not a breach of its contract with Rieke.

The City next contends it was not estopped to rezone from R-2 to R-1 those lots owned by Rieke and subject to the use restric-

tion. The district court found the City was estopped due to promises made in the Urban Renewal Plan and Rieke's reliance on the existing zoning.

Having concluded the City had no contractual obligation to provide R-2 zoning, there remains only the possibility that the City is equitably estopped to rezone.

"Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts." *United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc.,* 221 Kan. 523, 527, 561 P.2d 792 (1977); *Colonial Investment Co. v. City* of Leawood, 7 Kan.App.2d 660, 662-63, 646 P.2d 1149 (1982).

Equitable estoppel can be applied against a city in relation to a zoning matter if the city has acted within the scope of its authority. *Lines v. City of Topeka,* 223 Kan. 772, 780, 577 P.2d 42 (1978); *Colonial Investment Co. v. City of Leawood,* 7 Kan.App.2d at 662; *City of DeSoto v. Centurion Homes, Inc.,* 1 Kan.App.2d at 640.

In the present case, it appears that the City induced Rieke to believe there would be low density zoning, although not necessarily R-2. Even if the City had led Rieke to expect R-2 zoning, it is questionable whether he has shown sufficient reliance to invoke estoppel.

Here, as in *Houston v. Board of City Commissioners,* 218 Kan. at 332, and in *Colonial Investment Co. v. City of Leawood,* 7 Kan.App.2d at 667-68, we have a plaintiff-landowner who contends he has purchased land in reliance upon the existing zoning, but who has taken little action beyond the initial purchase to develop the property in accordance with the zoning. Purchase coupled with future plans to develop is insufficient to establish detrimental reliance. Compare with *Benson v. City of DeSoto,* 212 Kan. 415, 510 P.2d 1281 (1973), in which the court applied estoppel after plaintiff purchased land for particular purposes, the city annexed the land on plaintiff's petition and rezoned it for uses contemplated; plaintiff proceeded with and incurred considerable expenses for surveys, plat plans, designs, development

plans for streets and utilities and a plat of the property; and a newly elected city council refused to approve the plat and plans.

Rieke purchased property for low density residential use with 21 parcels suitable for duplexes. Between 1975 and 1978, the company constructed 45 single-family residences but never obtained a building permit for a duplex. The City Commission denied downzoning in one instance when driveway requirements in the construction of duplexes could not be met. On another occasion, Rieke was granted a five percent variance for duplex construction, a plan which was apparently abandoned in favor of the abortive subsidized housing plan. None of these actions are sufficient to estop the City from rezoning the tract.

Rieke's cross-appeal raises the issue of whether the district court erred in finding the evidence supported a reduction in plaintiff's damages from $33,000 to $20,500. As we have concluded there was no breach of contract by the City, this issue is moot.

Reversed.