Calvin L. GUNKEL and Mildred A. Gunkel, Plaintiffs,

v.

CITY OF EMPORIA, KANSAS, and Russell Schoenberger, Defendants.

Civ. A. No. 85–4164–S.

United States District Court, D. Kansas.

May 7, 1986.

*Dakota County,* No. Civ. 4–84–378 (D.Minn. Jan. 8, 1986).

Betty Joan Phelps, Phelps-Chartered, Topeka, Kan., for plaintiffs.

Dale W. Bell, Guy, Helbert, Bell & Smith, Chtd., Emporia, Kan., Wyatt M. Wright, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendants' motion for summary judgment. The uncontroverted facts for the purposes of this motion are as follows. This action arises out of the issuance and revocation of a building permit. Plaintiff, Galvin L. Gunkel, was a licensed contractor in the City of Emporia, Kansas in 1983 and 1984. A licensed contractor has the obligation to follow city building codes and zoning regulations. Plaintiff owned his own copy of the Uniform Building Code and reviewed the same sometime in the 1980's. Language contained in Section 303(e) of the Building Code allows a permit to be revoked if issued in violation of a city ordinance or regulation. Plaintiff's attorney, Robert Symmonds, also had a copy of the Building Code as well as the zoning regulations in his office.

On February 4, 1983, plaintiffs purchased the front 125 feet of Lot 10 [hereinafter Tract 1] from W.R. Ames. Plaintiff did not consult with an attorney prior to this purchase. Plaintiff intended to build single-family attached dwellings on Lot 10 and took out building permit # 0568 on March 10, 1983. The permit refers to the construction of a duplex and lists plaintiff Calvin Gunkel as the owner and contractor. Plaintiff alleges that although the word duplex appears on the permit, the parties understood and agreed that if the construction was such that the utilities would be separate, then the project would be considered single-family attached. Prior to the purchase of this lot, plaintiff had never built single-family attached housing. Prior to purchasing the front-half of Lot 10, plaintiff spoke to Russell Schoenberger, the Planning & Zoning Coordinator for the City of Emporia, regarding the requirements for single-family attached housing and learned about the separate utility and sewer requirements. Plaintiff assumes that he reviewed Ordinance # 1067 prior to purchasing Lot 10.

Pursuant to Ordinance # 1067, a single-family attached housing unit in the City of Emporia needs at least 22 feet of street frontage. A buildable lot in the City of Emporia must have a frontage upon a street. Plaintiff constructed a dwelling on Tract 1 of Lot 10. On July 20, 1983, plaintiffs sold the back half of Tract 1 of Lot 10 [hereinafter Tract 1B] to Edward and Lisa Benton. The legal papers drawn up represented that they purchased a single-family attached dwelling. The deed to the Bentons was not recorded until September 1, 1983.

On several occasions, plaintiff spoke with his attorney Symmonds about Ordinance # 1067 after he bought the first half of Lot 10 because he was thinking about buying the second half. Plaintiff entered into a contract dated August 10, 1983 to sell the remaining portion of Tract 1 [hereinafter Tract 1A]. On August 29, 1983, plaintiff took out building permit # 0852 to build a structure on Tract 2 of Lot 10. This was the first time plaintiff had taken out a building permit to build on the back one-half of a lot. Building permit # 0852 was issued as a duplex and there was no discussion about that aspect of the permit. When plaintiff took out permit # 0852, he did not own Tract 2 of Lot 10, had already

sold Tract 1B, and had entered into a contract to sell Tract 1A of Lot 10.

On August 31, 1983, plaintiffs conveyed Tract 1A to Joseph & Debra Baker and the deed was not recorded until September 2, 1983. On September 1, 1983, the Bakers purchased Tract 2 from W.R. Ames and deeded Tract 2 to plaintiff as a down payment on Tract 1A. Both deeds were recorded on September 2, 1983. Prior to purchasing Tract 2, plaintiff was aware of the 22 foot frontage required on single-family attached housing. Plaintiff did not review any zoning regulations prior to purchasing or building on Tract 2. Between August 29, 1983 and December 9, 1983, plaintiff never informed the City that he had purchased Tract 2 and sold off Tract 1. Likewise, plaintiff's attorney never informed the City that plaintiff sold off the front portion of Lot 10.

Plaintiffs' building permit was revoked on December 9, 1983, because of plaintiffs' action of selling off the front portion of the lot, thus violating the zoning rules and regulations of the City. Plaintiffs allege the revocation of this permit deprived them of constitutionally protected property interests. No other permits which plaintiff have taken out have been revoked and plaintiff has obtained a permit to build at another location after December, 1983.

The July 20, 1983 transaction to the Bentons created an illegal lot because there was no frontage on the street and the lot was unbuildable. The August 29, 1983 building permit was likewise illegal because the front half of the lot was sold to a different owner, thus creating an illegal lot out of Tract 2 which had no frontage on the street.

Prior to August 29, 1983, plaintiff and his attorney had discussed converting the front half of Lot 10 into a flag lot in order to satisfy Ordinance # 1067's 22 foot frontage requirement for a single-family attached dwelling. Previously on August 17, 1983, Mr. Bell, on behalf of the City, had written plaintiff's attorney, Mr. Symmonds, in regard to Lot 2 and specifically told him that the City intended to enforce the requirements for single-family attached dwellings and that all other single-family dwellings should be put in conformance with Ordinance # 1067. Mr. Symmonds at no time discussed with Mr. Bell or Mr. Schoenberger what effect the selling off of the front half of Lot 10 would have on the back half of Lot 10. At least by July 29, 1983, Mr. Symmonds had reviewed Ordinance # 1067 and was fully aware of its provisions including the 22 foot frontage requirement.

On August 23, 1983, Mr. Symmonds met with Mr. Bell and Mr. Schoenberger on behalf of his client W.R. Ames, primarily to discuss problems concerning Lot 2 in the Westridge Addition. During the discussion, Mr. Symmonds asked whether plaintiff could sell the front half of his property as single-family attached and the City said yes. The 22 foot frontage requirement was not specifically brought up at this meeting. Mr. Symmonds inquired whether there was any reason the plaintiffs property could not be sold as single-attached and was told no. However, Mr. Symmonds at this meeting did not inform Mr. Bell or Mr. Schoenberger that plaintiff did not own the entire lot.

The City of Emporia Zoning Regulations and Ordinance # 1067 were in effect at the time permit # 0852 was issued and were matters of public record. The Uniform Building Code also in existence allowed a permit to be revoked at any time if "issued in error or on the basis of incorrect information supplied, or in violation of any ordinance or regulation or any other provisions of this Code." Permit # 0852 was issued under and subject to these conditions.

Plaintiffs assert the City waived Ordinance # 1067 expressly or by implication through the August 23, 1983 meeting, the issuance of permit # 0852 and by allowing plaintiffs to spend approximately four (4) months building the project. Plaintiffs assert that by revoking the permit, the City deprived them of their property without due process of law in violation of 42 U.S.C. § 1983.

To rule favorably on a motion for summary judgment, the court must first determine that the matters considered in connection with the motion disclose "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. The principal inquiry is therefore whether a genuine issue of material fact exists. *Dalke v. The Upjohn Co.*, 555 F.2d 245 (9th Cir.1977); *Hanke v. Global Van Lines, Inc.*, 533 F.2d 396 (8th Cir.1976). A motion under Rule 56 will be denied unless the movant demonstrates beyond doubt that he is entitled to a favorable ruling. *Madison v. Deseret Livestock Co.*, 574 F.2d 1027 (10th Cir.1978); *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 516 F.2d 33 (10th Cir.1975). Pleadings and documentary evidence are to be construed liberally in favor of a party opposing a Rule 56 motion. *Harman v. Diversified Medical Investments Corp.*, 488 F.2d 111 (10th Cir.1973), *cert. denied* 425 U.S. 951, 96 S.Ct. 1727, 48 L.Ed.2d 195 (1976). However, once a summary judgment motion has been properly supported, the opposing party may not rest on the allegations of the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Coleman v. Darden*, 595 F.2d 533, 536 (10th Cir.), *cert. denied* 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184 (1979). A party with evidence tending to create a factual issue must present that evidence to the trial judge or summary judgment is proper. *Otteson v. United States*, 622 F.2d 516, 520 (10th Cir. 1980).

Defendants assert that plaintiffs cannot claim a property interest in building permit # 0852 as a matter of law. Property interests are not created by the United States Constitution, but are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Any property interest that plaintiffs claim must have its origin in Kansas law or in an existing poli-

cy, practice, rule or understanding. An interest in property arises only when there is a legitimate claim of entitlement to it; merely having an abstract need or a desire for the particular benefit or a unilateral expectation is insufficient. *Id.* at 577, 92 S.Ct. at 2709.

Kansas law is clear that "a building permit issued in violation of law or under a mistake of fact confers no right, may be revoked at any time, and does not estop the city from doing so." *City of DeSoto v. Centurion Homes, Inc.*, 1 Kan.App.2d. 634, 640, 573 P.2d 1081, 1086 (1977). In *Restaurants of Wichita, Inc. v. City of Wichita*, 215 Kan. 636, 527 P.2d 969 (1974), the Kansas Supreme Court therein stated: "[I]t is the general rule that there is no contract or vested right of property in a license or permit as against the power of the state or a municipality to revoke it for cause." *Id.*, 215 Kan. at 639, 527 P.2d at 972. In both of these cases, construction had already begun on the projects prior to the cities' revocation of their permits and in the *Restaurants of Wichita* case, the sign in question was already fully erected.

■ Plaintiffs argue that once a building permit is validly issued and in the hands of the owner or builder, that building permit, as well as the land upon which the building will take place, constitutes a property interest which cannot be taken without due process of law. In support of this assertion, plaintiffs cite *Scott v. Greenville County*, 716 F.2d 1409, 1421 (4th Cir.1983) *and Wheeler v. City of Pleasant Grove*, 664 F.2d 99 (5th Cir.1981), *cert. denied*, 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 847 (1982). Those cases considered permits issued in accordance with existing law which were deemed to be valid when issued. The permit in issue in the case at bar did not comply with existing law and therefore could create no vested property right.

■ Plaintiffs assert that the permit was legally issued because defendants were fully informed and knew what was going on when the permit was issued, and also there existed an express contract or at least a

mutual understanding between the parties concerning the permit which would rise to the level of a property interest. The court has carefully reviewed the record with all reasonable inferences in plaintiffs' favor yet cannot conclude that the permit was valid when issued. Plaintiffs have produced no facts to support their assertion that the permit was issued in accordance with existing ordinances and regulations. There is nothing in the record to lead the court to conclude that plaintiff had a vested property right in permit # 0852.

■ Even if the court were to conclude that the City was aware of the split ownership of the lot, the permit still was illegally issued and created no vested rights. Although a city may be estopped from revoking a permit in certain situations, estoppel does not apply in cases of illegally issued permits. See *City of DeSoto*, 1 Kan. App.2d 634, 573 P.2d 1081. As to plaintiffs' contention regarding a contract or a mutual understanding between the parties, there are no facts to support this assertion. The court concludes that permit # 0852 did not create a vested property right, therefore plaintiff may not bring an action pursuant to 42 U.S.C. § 1983.

■ As to plaintiffs' remaining state claim, the court declines to exercise pendent jurisdiction. See *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Where federal claims are dismissed prior to trial, it is also appropriate to dismiss the state claims. *Id.* at 726, 86 S.Ct. at 1139. IT IS BY THE COURT THEREFORE ORDERED that defendants' motion for summary judgment is hereby granted.