Calvin L. GUNKEL and Mildred A. Gunkel, Plaintiffs–Appellants,

v.

CITY OF EMPORIA, KANSAS and Russell Schoenberger, Defendants–Appellees.

No. 86–1891.

United States Court of Appeals, Tenth Circuit.

Dec. 29, 1987.

Fred W. Phelps, Jr., Phelps—Chartered, Topeka, Kan., for plaintiffs-appellants.

Wyatt M. Wright, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for defendants-appellees.

Before McKAY, LOGAN and ANDERSON, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Plaintiffs/Appellants Calvin and Mildred Gunkel ("the Gunkels") brought a 42 U.S. C. § 1983 (1982) action along with pendent state claims against the city of Emporia, Kansas, and Russell Schoenberger, the city's zoning coordinator (collectively "Emporia"). The district court granted Emporia's motion for summary judgement on the section 1983 claim and dismissed the state law claims.[1]  For the reasons below we affirm that judgment.[2]

## I.

Emporia zoning regulations require that every city lot have frontage on a city street. Further, lots must have specified street frontages before a building permit will be granted to build particular structures on those lots. Of relevance to this suit is Emporia's requirement that single-family attached housing[3] have twenty-two feet of frontage on a city street.

On February 4, 1983, the Gunkels purchased approximately the front half of lot 10 block 3 of Westridge Estates Addition in the City of Emporia. This front section of lot 10 is referred to in the record as lot 10 tract one, and the back half of lot 10, which the Gunkels did not purchase at this time, is referred to in the record as tract two. This purchase left the back half of lot 10 (tract two) unimprovable because it had no frontage.

---

1. *Gunkel v. City of Emporia*, 634 F.Supp. 345 (D.Kan.1986).

2. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.8. The cause is therefore ordered submitted without oral argument.

3. Single-family attached housing differs from duplex housing only in that each unit requires separate utilities and utility lines, thicker fire walls, "twenty-two feet frontage upon a public street," and may be individually owned. In addition, each structure may contain up to four individual units. Emporia, Kan., Ordinance 1067 (October 7, 1981).

Lot 10 was in a city zoning district which permitted the construction of single-family or two-family dwellings. Accordingly, in the spring of 1983 the Gunkels built a duplex on tract one. They subsequently sold the back half of the duplex and the back half of their property (referred to in the record as tract 1B) to Edward and Lisa Benton, representing it to be single-family attached as opposed to duplex housing. On August 10, 1983, the Gunkels entered into a contract with Joseph and Debra Baker to sell to them the front half of the duplex (tract 1A) under a similar arrangement. The execution of the contract called for the Bakers to obtain another piece of property (which turned out to be tract two) and trade it to the Gunkels as a downpayment for the tract 1A duplex unit.

On August 29, 1983, Mr. Gunkel applied for a building permit to build another structure on tract two. Neither the Gunkels nor their attorney recalls informing the city at or before this time that the Gunkels were not the sole possessors of lot 10. *See* Deposition of Calvin L. Gunkel at 105–06, 111, 120; Deposition of Robert Symmonds at 28–29; Deposition of Mildred A. Gunkel at 19–20. A building permit for a duplex was issued on that date. On August 31, the Gunkels conveyed the front duplex (tract 1A) to Joseph and Debra Baker. On September 1, 1983, the Bakers purchased tract two of lot 10 and deeded it to the Gunkels. All deeds involved in this transaction were recorded on September 2, 1983.[4] Thereafter, the Gunkels began construction on what they apparently believed

to be single-family attached housing on tract two of lot 10.[5] The city, after discovering related problems on neighboring lots, inspected the multiple titles to lot 10 and revoked the Gunkels building permit on December 9, 1983 because tract two of lot 10 had no street frontage as required by Emporia ordinances.

The Gunkels argue that Coordinator Schoenberger was fully informed of all of their construction plans and the configuration and ownership of lot 10 and that he knowingly approved the project and issued the building permit to begin construction. As a result of Schoenberger's alleged knowledge the Gunkels claim that the building permit was legally issued, that they had a property right in the permit, and that they were denied their civil rights when it was revoked without notice or hearing.

## II.

Before a successful claim can be brought under 42 U.S.C. § 1983, a plaintiff must demonstrate that he has been deprived of a federal right, and that the right's deprivation was under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). In this case there is no question that the building permit was revoked pursuant to a city zoning regulation.[6] Accordingly, the revocation was un-

---

**4.** The deed for the July 20 sale to the Bentons, however, was recorded a day earlier on September 1, 1983.

**5.** Presumably, had the Gunkels not sold off tract one of lot 10 they could have built another *duplex* on tract two, because the reunified lot would have had frontage. But, because the Gunkels sold off all of tract one, there was no street frontage on tract two and even the construction of a duplex became prohibited. Although it is not directly relevant to the cancellation of the building permit, the sale of tract 1B also violated city ordinances because, assuming that the structure did otherwise qualify as a single-family attached dwelling, the lot sold to the Bentons had no street frontage as required by City Ordinance 1087. And, individual duplex

units cannot be separately owned making the sale of lot 1A to the Bakers problematic.

**6.** Section 303(e) of the Uniform Building Code which was applicable in Emporia at the time the building permit was issued states, "[t]he building official may in writing, suspend or revoke a permit issued under the provisions of this code whenever the permit is issued in error or on the basis of incorrect information supplied, or in violation of any ordinance or regulation or any of the provisions of this code." Unif.Building Code § 303(e) (1982). After the permit was issued, but before it was revoked, the city re-enacted this section of the building code as a city ordinance. However, the wording of any section of the code relevant to this lawsuit was not

der color of state law. The question remains whether the Gunkels had a property right in the building permit which would entitle them to the due process guaranteed by the United States Constitution before the city cancelled the permit.

As the Supreme Court has noted, property interests are not created by the Constitution. "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). And, although "mutually explicit understandings" can be sufficient to create such property rights, *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699–700, 33 L.Ed.2d 570 (1972), "the sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982) ("The hallmark of property ... is an individual entitlement grounded in state law.").

In this case the district court determined that Kansas state law does not recognize

property rights in building permits which have been issued by mistake or in violation of state law.[7] Thus, because tract two did not comply with the twenty-two feet frontage requirement, and because the Gunkels were unable to show to the court, even with all reasonable inferences drawn in their favor, that the permit was issued pursuant to a mutual understanding with Schoenberger exempting them from this requirement, the district court found that the permit was issued by mistake or in violation of the law. As a result, the Gunkels had no property right in the permit and the city could revoke it without notice or hearing. *Gunkel*, 634 F.Supp. at 349. The Gunkels claim that in so ruling the district court erred in one major respect—it impermissibly weighed disputed facts in determining that the building permit was illegally issued or issued under a mistake of fact.[8] The Gunkels argue that the evidence was sufficient for a reasonable jury to infer that Schoenberger was fully aware of all the relevant occurrences on lot ten before he issued the building permit.

Nonetheless, we note, as did the district court, that under Kansas law it makes no difference whether there was a mutual

changed. *See* Emporia, Kan., Ordinance 83–34 (September 7, 1983).

7. The court based that determination on two Kansas cases, one from the Supreme Court and the other from the Court of Appeals. In the first, *Restaurants of Wichita, Inc. v. City of Wichita*, 215 Kan. 636, 527 P.2d 969 (1974), the Kansas Supreme Court noted in dicta that "it is the general rule that there is no contract or vested right of property in a license or permit as against the power of the state or a municipality to revoke it for cause." In the second, *City of DeSoto v. Centurion Homes, Inc.*, 1 Kan.App.2d 634, 573 P.2d 1081 (Kan.Ct.App.1977), the plaintiff asserted that the city should be estopped from cancelling a building permit which it had already issued. The Court of Appeals noted "a building permit issued in violation of law or under a mistake of fact confers no right, may be revoked at any time, and does not estop the city from doing so." *Id.* at 1086. Because the appellants do not question the district court's reading of state law, and because we find it persuasive, we apply the law as it is read by the district court. We note in addition, however, that these cases involved estoppel, and it is not clear, even if the city were estopped here, that estoppel alone can create property rights in a plaintiff

sufficient to support a section 1983 action. We need not, however, decide the question in this case.

8. They also argue that the legality of the building permit under state law is immaterial because "when a state issues a building permit, it is protected by federal constitutional safeguards, whether it was issued illegally or not, and whether it was issued under mistake of fact or not." Appellant's Brief at 16. This statement of law ignores the well-recognized rule that property rights must be founded in an independent source recognized by state law. *See Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S.Ct. 1148, 1154–55, 71 L.Ed.2d 265 (1982). Even the cases cited by the Gunkels to support their proposition first determined that the permit was properly issued under state law before holding that the state could not cancel the permit without notice and hearing. *See Kerley Indus., Inc. v. Pima County*, 785 F.2d 1444, 1446 (9th Cir. 1986); *Scott v. Greenville County*, 716 F.2d 1409, 1421 (4th Cir.1983); *Wheeler v. City of Pleasant Grove*, 664 F.2d 99 (5th Cir.1981), *cert. denied*, 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 847 (1972).

agreement between Schoenberger and the Gunkels excepting them from enforcement of the zoning regulations. The Gunkels still had no property right in the cancelled building permit. Mr. Gunkel admits having read provisions of the Uniform Building Code, *see* Deposition of Calvin L. Gunkel at 133–36, which authorize the city's building official to "suspend or revoke a permit issued under the provisions of this code whenever the permit is issued in error or on the basis of incorrect information supplied, or in violation of any ordinance or regulation or any of the provisions of this code." Unif.Building Code § 303(e) (1982). This same code section, which was also read by Gunkel, further indicates that:

> [t]he issuance or granting of a permit or approval of plans and specifications shall not be construed to be a permit for, or an approval of any violation of, any of the provisions of this code or of any other ordinance of this jurisdiction. *No permit presuming to give authority to violate or cancel the provisions of this code shall be valid.*

*Id.* § 303(c) (1982) (emphasis added). Further, in signing the building permit application Mr. Gunkel obligated himself to "construct said structure in accordance with all requirements of the Ordinance (sic) of the City of Emporia, Kansas, whether herein specified or not." Deposition of Calvin L. Gunkel, Ex. 11. The Gunkels fail to cite any authority which suggests that Schoenberger has the authority to set the zoning and construction regulations himself,[9] and all of the operative ordinances suggest that building permits are valid only when construction specifications comply with applicable regulations and codes. The Gunkels also fail to allege that the city had a custom or practice of allowing Coordinator Schoenberger to selectively enforce building and zoning regulations in the issuance of building permits.

Given that Emporia city ordinances explicitly invalidate building permits which violate city ordinances even if they were knowingly issued by a building official, and given that the Gunkels' permit was issued in violation of such ordinances, it is difficult to accept the Gunkel's argument that state law grants them a property right in the permit. Even if the Gunkels had entered into an agreement with Schoenberger to avoid the zoning laws, it would not make the resulting building permit lawful.

Since the permit was not validly issued there is no property right in it under Kansas law. Thus, revocation of the permit without notice or hearing does not amount to a harm for which section 1983 provides a remedy. We decline to sit as "[a] zoning board[ ] of appeals 'when presented with claims which, although couched in constitutional language, at bottom amount only to the run of the mill dispute between a developer and a town planning agency.'" *Littlefield v. City of Afton*, 785 F.2d 596, 607 (8th Cir.1986) (*quoting Scott v. Greenville County*, 716 F.2d 1409, 1419 (4th Cir. 1983)). *See also Albery v. Reddig*, 718 F.2d 245, 249 (7th Cir.1983)

We therefore affirm the district court's grant of summary judgment to the city of Emporia. We also affirm the district court's decision pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), not to hear the remaining pendent state law claims in light of the dismissal of the jurisdiction-granting claim.

AFFIRMED.

---

9. Kansas law distinguishes cases where a contractor has conformed with specifications established by a city official who is authorized by ordinance to set such specifications. *See DeSoto*, 573 P.2d at 1087. Because Schoenberger is not authorized to set the zoning regulations for the city of Emporia this distinction does not help the Gunkel's cause.